[Nos. 33514, 33515, 33516, 33517. Department Two. March 15, 1956.]

THE STATE OF WASHINGTON, *Plaintiff and Relator*, v. JAMES DAVIS, *Defendant,* THE SUPERIOR COURT FOR WALLA WALLA COUNTY, *Glenn L. Bean, Judge, Respondent.*

THE STATE OF WASHINGTON, *Plaintiff and Relator*, v. KENNETH GEORGE, *Defendant,* THE SUPERIOR COURT FOR WALLA WALLA COUNTY, *Glenn L. Bean, Judge, Respondent.*

THE STATE OF WASHINGTON, *Plaintiff and Relator*, v. CHARLES LAMBERT, *Defendant,* THE SUPERIOR COURT FOR WALLA WALLA COUNTY, *Glenn L. Bean, Judge, Respondent.*

THE STATE OF WASHINGTON, *Plaintiff and Relator*, v. RUSSELL SUMMERS, *Defendant,* THE SUPERIOR COURT FOR WALLA WALLA COUNTY, *Glenn L. Bean, Judge, Respondent.*[1]

[1] Reported in 294 P. (2d) 934.

514

*Arthur L. Hawman, Aurel M. Kelly,* and *Howard J. Martin,* for plaintiff and relator.

*Conkey & Eggers, Dyar & Hubbard* and *Sherwood & Comfort,* for defendants.

HILL, J.— In a criminal case, when the state can satisfy the supreme court that an appeal is not an adequate remedy, the supreme court will issue a writ of certiorari for the review of an order made and entered by the superior court from which the state could appeal.

The instant cases are consolidated for the purposes of this review. Defendants James Davis, Kenneth George, and Russell Summers were charged in separate informations with conspiracy to kidnap (Count I) and prison riot (Count II). Defendant Charles Lambert was charged with

kidnaping (Count I), conspiracy to kidnap (Count II), and prison riot (Count III). All of these offenses arose out of the same act or transaction or connected acts or transactions. The state concedes that the informations must be amended to so state. Laws of 1925, Ex. Ses., chapter 109, § 1, p. 168 (Rem. Rev. Stat., § 2059 [*cf.* RCW 10.37.060]).

The trial court sustained demurrers and granted motions to quash directed against the count charging kidnaping in the Lambert information and against the count charging conspiracy to kidnap in each of the four informations, leaving one count against each defendant, *i.e.*, prison riot.

The state sought and was granted a writ of certiorari in each case for a review of the order quashing the counts charging kidnaping and conspiracy to kidnap. The defendants have moved to quash the writs.

■ An appeal, if prosecuted before the trial of the counts alleging prison riot, would entail a long delay and prevent that to which society is entitled and of which the defendants have a constitutional guarantee, *i.e.*, a speedy trial. Constitution, Art. I, § 22. Such an appeal, if prosecuted after either conviction or acquittal on the counts alleging prison riot, would be of dubious value, even if successful, because of problems relating to former jeopardy. The delay, the inconvenience, and the expense of a series of trials arising out of the same transactions or connected transactions were the reasons for remedial legislation in 1925. Laws of 1925, Ex. Ses., chapter 109, § 1, p. 168 (Rem. Rev. Stat., § 2059 [*cf.* RCW 10.37.060]). It is obvious, therefore, that, if the state had a right to join the kidnaping and conspiracy counts to the counts charging prison riot as arising out of the same transaction or connected transactions, appeal would not be an adequate remedy. The motion to quash the writs of certiorari is accordingly denied.

We are confronted with a most unusual situation. By chapter 241 of the Laws of 1955, p. 1007 (RCW 9.94.010-9.94.060), it was intended to designate and define three offenses chargeable to prisoners of state penal institutions and two other offenses chargeable to "any person." The title of that chapter reads:

"An Act relating to crimes of prisoners of state penal institutions, defining [1] prison riot, [2] the holding of hostages, [3] possession of contraband, [4] interference with laboring prisoners, [5] the giving·of narcotics and firearms to a prisoner; providing penalties therefor; and empowering officers and guards of penal institutions to have powers of a peace officer in certain situations." (Numbers added.)

"Prison riot" is defined and the penalty therefor is fixed in §§ 1 and 2 of the act. RCW 9.94.010, 9.94.020. "The holding of hostages" is purportedly defined and the penalty fixed in § 3 of the act. RCW 9.94.030. (The significance of "purportedly" is explained later.) "Possession of contraband" is defined and the penalty fixed in § 4 of the act RCW 9.94.040. "Interference with laboring prisoners" and "the giving of narcotics and firearms to a prisoner" are defined and the penalty for each is fixed in § 6 of the act. RCW 9.94.060. Each of the five is a distinct offense, and each carries its own penalty. There is no basis for the state's position that "the holding of hostages" is included in "prison riot."

The trial judge was unquestionably of the opinion—and we think justifiably so—that the legislature intended, by § 3 of chapter 241 (RCW 9.94.030), to supersede the kidnaping statute, if ever applicable, in the situation where an inmate of a state penal institution holds or participates in holding an officer of that institution as a hostage by force or violence or the threat thereof.

In addition to the count charging prison riot, each of the defendants was charged with entering into an "agreement, confederation and conspiracy" with named co-conspirators to "seize, confine and inveigle" named victims,

" . . . with intent to cause them without authority of law to be secretly confined and imprisoned and to cause them to be held to service with intent to extort or obtain a reward for their release ·or disposition."

While each defendant is alleged, in the prison riot charge, to be an inmate of the Washington state penitentiary, none of his co-conspirators are alleged to be such inmates, and none of the victims whom the conspirators intended to be

"secretly confined and imprisoned," etc., are designated as officers of the Washington state penitentiary. For aught that the informations tell us, the victims may have been other inmates of the penitentiary, employees of nonofficer status, or visitors within the gates.

■ Unless the intended victims of a defendant who is an inmate of a state penal institution, and of his co-conspirators, are officers of a state penal institution, § 3 of chapter 241 of the Laws of 1955 would have no application; and there would be no reason why the defendant should not be charged with conspiracy to kidnap or, in the case of defendant Lambert, with kidnaping. The trial judge, concerned with the realities of the situation and knowing that the victims of the alleged conspiracy or the alleged kidnaping were (as seems to be conceded) prison guards or other officers of the institution, sustained the demurrers to quash and quashed the counts charging kidnaping and conspiracy to kidnap, having concluded, as we have indicated, that the offense of holding an officer as hostage had superseded the kidnaping statute within the very limited area of the operation of § 3 of chapter 241, Laws of 1955. If that section were what it purports to be, the rule laid down in *State v. Becker* (1951), 39 Wn. (2d) 94, 96, 234 P. (2d) 897, would be clearly applicable, *i.e.*:

"Where general and special laws are concurrent, the special law applies to the subject matter contemplated by it to the exclusion of the general law."

If the completed offense would not be kidnaping, there would, of course, be no conspiracy to kidnap.

■ Unfortunately, the issues here presented must be determined upon a basis not suggested by either the state or the defendants and which did not suggest itself to this court until, in the preparation of this opinion, an analysis of § 3 of chapter 241, Laws of 1955, disclosed that it defines no offense and makes nothing unlawful. We quote the section verbatim:

"Whenever any inmate of a state penal institution shall hold, or participate in holding, an officer of such institution

as a hostage, by force or violence, or the threat thereof, or shall prevent, or participate in preventing an officer of such institution from carrying out his duties, by force or violence, or the threat thereof, and upon conviction shall be punished by imprisonment in the state penitentiary for not less than one year nor more than ten years."

If before the words "and upon conviction," the legislature had said, "he shall be guilty of holding an officer as a hostage" (following the language used in § 1 of the act) or "he shall be guilty of a felony" (following the language used in §§ 4 and 6 of the act), the legislative purpose would have been accomplished. However, nothing is accomplished by the section as it now stands. (If the legislature seeks to correct this oversight, it should give attention to a definition of "officer of a penal institution," particularly since in § 5 a distinction between officers and guards is suggested by the reference to "All officers and guards of state penal institutions. . . .")

■ Except in § 3, there is nothing in the act which hints of any attempt or purpose to supersede the kidnaping statute. The effort to designate and define a distinct and separate offense by § 3 being abortive, there is no reason why the state should not charge kidnaping (or conspiracy to kidnap) arising out of the same transaction or connected transactions charged in the prison riot count.

The trial court is therefore reversed, and the counts charging kidnaping and conspiracy to kidnap are restored to the informations, subject to the amendment which the state concedes it must make to identify the counts as part of the same act or transaction or of connected transactions. Laws of 1925, Ex. Ses., chapter 109, § 1, p. 168 (Rem. Rev. Stat., § 2059 [cf. RCW 10.37.060]).

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.

_____

April 17, 1956. Petition for rehearing denied.