683 S.E.2d 268

**The STATE, Respondent,**

v.

**Vincent NEUMAN, Sr., Appellant.**

**No. 26676.**

Supreme Court of South Carolina.

Heard March 17, 2009.

Decided June 29, 2009.

*State Tax Comm'n,* 134 P.3d 1116 (Utah 2006); *Midland Fin. Corp. v. Wis. Dep't of Revenue,* 116 Wis.2d 40, 341 N.W.2d 397 (1983).

Appellate Defender Kathrine H. Hudgins, of South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, Assistant Attorney General Michelle J. Parsons, all of Columbia, and Solicitor Donald V. Myers, of Lexington, for Respondent.

Justice BEATTY.

Vincent Neuman appeals from his conviction for "Taking of Hostages By an Inmate."[1] His sole contention is that the trial judge erred in not dismissing this charge on the ground

[1]. Neuman was also convicted of attempted escape. He has not appealed this conviction or the consecutive five-year sentence.

the applicable statute, section 24–13–450 [2] of the South Carolina Code, is unconstitutionally vague. Pursuant to Rule 204(b), SCACR, this Court certified the case from the Court of Appeals. We affirm.

## FACTS

A McCormick County grand jury indicted Neuman for "Taking of Hostages by an Inmate" and attempted escape following an incident at the McCormick Correctional Institution where Neuman was incarcerated.

At trial, Cornell Lyons, a correctional officer at the McCormick Correctional Institution, testified that during the early morning hours of February 17, 2001, Neuman "attacked" him when he turned his back to use a microwave. As Lyons confronted Neuman, he was grabbed from behind by Andre Waters, another inmate. During the struggle, Neuman and Waters attempted to handcuff Lyons. When Lyons asked the inmates what they were doing, they responded "we're tryin' to get outta here."

Once the inmates successfully handcuffed Lyons, they took his keys and locked him in a storage closet. Approximately five minutes later, the inmates brought Tammy Mason, another correctional officer, to the storage closet. Mason testified that during her count of the inmates around 1:30 a.m., she was accosted by Neuman and Waters and then handcuffed before she was brought to the storage closet. Shortly thereafter, Neuman and Waters brought inmate Franklin Mackey, who was visibly injured, to the storage closet. According to Mason, Mackey made the comment that he was beaten up by Neuman and Waters.

---

**2.** This section provides:

An inmate of a state, county, or city correctional facility or a private entity that contracts with a state, county, or city to provide care and custody of inmates, including persons in safekeeper status, acting alone or in concert with others, who by threats, coercion, intimidation, or physical force takes, holds, decoys, or carries away any person as a hostage or for any other reason whatsoever shall be deemed guilty of a felony and, upon conviction, shall be imprisoned for a term of not less than five years nor more than thirty years. This sentence shall not be served concurrently with any sentence being served at the time the offense is committed.
S.C.Code Ann. § 24–13–450 (2007).

After approximately thirty minutes, Neuman and Waters returned to the closet, opened the door, and asked for medical assistance as they were severely injured as a result of their attempted escape over razor wire surrounding the correctional facility. Neuman then took Lyons to a telephone where a call was made alerting other correctional officers about the physical condition of Neuman and Waters. The responding officers then apprehended Neuman and Waters.

After the incident, Neuman provided a statement to Investigator Jeff Bentley in which Neuman admitted to his involvement in the incident with Waters. As part of the investigation, it was discovered that Neuman's wife and a childhood friend of Neuman's had attempted to aid Neuman in his escape.

Waters testified for the defense. Prior to Neuman's trial, Waters had pled guilty to the charges arising from the escape attempt. According to Waters, it was his idea to escape and that Neuman "decided to come along" after helping Waters restrain Lyons. Waters claimed he was the one who handcuffed Lyons and Mason and put them in the storage closet before attempting to escape.

During reply, Investigator Bentley discounted Waters's testimony. When Bentley interviewed Waters the day of the incident, Waters claimed the escape was Neuman's idea and they were both involved in restraining Lyons, Mason, and Mackey and locking them in the storage closet.

After the State's case, Neuman's counsel moved for a directed verdict and made a motion to dismiss the indictment for the taking of hostages by an inmate on constitutional grounds. At the close of the testimony, Neuman's counsel renewed his motion. The judge denied both of these motions.

The jury convicted Neuman of attempted escape and taking of hostages by an inmate. Pursuant to the recidivist statute,[3] the trial judge sentenced Neuman to life without parole for the hostage-taking charge and a consecutive five-year sentence on the escape charge.

Neuman appeals his conviction for taking of hostages by an inmate.

---

3. S.C.Code Ann. § 17–25–45 (2003 & Supp.2008).

## DISCUSSION

Neuman asserts the trial judge erred in refusing to dismiss the taking of hostages by an inmate charge on the ground section 24–13–450 is unconstitutionally vague. Because the statute does not include the word "unlawfully," Neuman claims the statute effectively criminalizes lawful activity. Without the word "unlawfully," Neuman contends the statute does not contain the "language necessary to narrowly tailor the statute to apply only to unlawful activity."

### A.

As a threshold issue, the State asserts Neuman's argument is not preserved for appellate review because Neuman did not specifically rely on the void for vagueness doctrine when he challenged section 24–13–450 at trial. Because Neuman only referenced the overbreadth doctrine in his trial argument, the State claims Neuman did not preserve his argument for this Court's review.

At trial, Neuman's counsel moved to dismiss the indictment for taking of hostages by an inmate. In making this motion, counsel argued:

> [W]e move to dismiss the prosecution based on this indictment of hostage taking as the statute is overbroad (inaudible) objection the constitution is defective in that it encompasses about 5 to 10 elements of other crimes making it almost impossible to defend against constitutionally and we would move to dismiss the indictment at this time based on its constitutional defect under the—4th, 5th, 6th, 8th and 14th amendments of the United States Constitution and the applicable South Carolina statutes.

The trial judge denied Neuman's motion to dismiss. In his ruling, however, the judge recognized that the statute "is unusual and it is very broad." The judge also expressed his concern that the statute did not include "an unlawful purpose of criminal intent." Based on this concern, the judge indicated that he would include in his charge that there "has to be an unlawful purpose." Applying a "reasonable construction," the judge ultimately concluded that the statute was sufficient for the State to prosecute Neuman.

Although the State is technically correct that Neuman did not specifically raise the vagueness doctrine in his trial argument, we find this issue was sufficiently preserved for this Court's review.

First, Neuman's counsel's use of the term "overbroad" is not necessarily dispositive. Clearly, a challenge to section 24–13–450 would not have been based on the overbreadth doctrine. This statute could not conceivably suppress protected speech or conduct. Without such a First Amendment concern, the overbreadth doctrine would not have been an appropriate ground to challenge the statute. *See In re Amir X.S.*, 371 S.C. 380, 384, 639 S.E.2d 144, 146 (2006) (noting a person raising a First Amendment overbreadth doctrine challenge to a statute must demonstrate that the statute could cause someone to refrain from constitutionally-protected expression); *State v. Bouye*, 325 S.C. 260, 265, 484 S.E.2d 461, 464 (1997) ("The overbreadth doctrine applies only to First Amendment cases where the challenged law would have a 'chilling effect' on constitutionally protected forms of speech.").

Secondly, a review of Neuman's counsel's argument reveals that he listed multiple constitutional amendments in an effort to challenge the statute as constitutionally defective. We find counsel's assertions regarding the Fifth and Fourteenth amendments, as well as his assertion that the statute was "almost impossible to defend," necessarily included a due process challenge. In turn, these arguments were sufficiently broad to incorporate the vagueness doctrine. *See Kurschner v. City of Camden Planning Comm'n*, 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008) ("Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment of the United States Constitution."); *Guinyard v. State*, 260 S.C. 220, 226, 195 S.E.2d 392, 394 (1973) ("The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute

is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional." (citation omitted)).

Finally, the trial judge interpreted Neuman's counsel's argument as one for vagueness. In his ruling, the judge recognized the omission of the term "unlawful" in the statute. Thus, Neuman's appellate argument was sufficiently raised to and ruled upon to be preserved for this Court's review. *See State v. Nelson,* 331 S.C. 1, 6 n. 6, 501 S.E.2d 716, 718 n. 6 (1998) (stating "the ultimate goal behind preservation of error rules is to insure that an issue raised on appeal has first been addressed to and ruled on by the trial court").

## B.

Having found that Neuman's argument is proper for appellate review, we now turn to the merits of Neuman's constitutional challenge.

 "This Court has a limited scope of review in cases involving a constitutional challenge to a statute because all statutes are presumed constitutional and, if possible, will be construed to render them valid." *Curtis v. State,* 345 S.C. 557, 569, 549 S.E.2d 591, 597 (2001). "A 'legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt.'" *In re Treatment and Care of Luckabaugh,* 351 S.C. 122, 134–35, 568 S.E.2d 338, 344 (2002) (quoting *Joytime Distribs. & Amusement Co. v. State,* 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999)). "A possible constitutional construction must prevail over an unconstitutional interpretation." *Curtis,* 345 S.C. at 569–70, 549 S.E.2d at 597.

 "The void-for-vagueness doctrine rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication." *State v. Houey,* 375 S.C. 106, 113, 651 S.E.2d 314, 318 (2007). "The constitutional standard for vagueness is whether the law gives fair notice to those persons to whom the law applies." *In re Amir X.S.,* 371 S.C. at 391–92, 639 S.E.2d at 150. "A statute is not unconstitutionally vague if a person of ordinary intelligence seeking to obey the law will know, and is sufficiently

warned of, the conduct the statute makes criminal." *State v. Curtis*, 356 S.C. 622, 629, 591 S.E.2d 600, 603 (2004). This concept has been explained as follows, "[a] law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that a person of common intelligence must necessarily guess as to its meaning and differ as to its application." *Curtis v. State*, 345 S.C. at 572, 549 S.E.2d at 598. "One to whose conduct the law clearly applies does not have standing to challenge it for vagueness." *Id.*

Initially, we note that Neuman does not have standing to challenge section 24–13–450 for vagueness. As we view the evidence, Neuman's conduct falls within even the most restrictive application of the statute. Neuman, an inmate, admitted his culpability in acting in concert with Waters, another inmate. Both Correctional Officers Lyons and Mason testified that Neuman physically assaulted them, handcuffed them, forced them into the dayroom, and ultimately locked them inside a closet in an effort to escape from prison. In view of this evidence, we believe Neuman lacks standing to challenge the constitutionality of the statute. *See State v. Michau*, 355 S.C. 73, 77, 583 S.E.2d 756, 759 (2003) (concluding appellant lacked standing to challenge statute as unconstitutionally vague given the statute clearly applied to his conduct); *In re Amir X.S.*, 371 S.C. at 392, 639 S.E.2d at 150 (finding appellant did not have standing to challenge statute on grounds of vagueness where appellant's conduct fell within the most narrow application of the statute).

At oral argument, however, Neuman claimed that section 24–13–450 did not apply to his conduct in that he did not hold the correctional officers as "hostages" as that term is usually defined.[4] Specifically, Neuman disputed that the incident at the McCormick Correctional Institution constituted a hostage-taking situation. Given the confinement of the correctional officers was not with intent of using the officers to secure demands from a third party, Neuman claimed his conduct was akin to that of kidnapping. Because the statute did not apply

---

4. Although the trial judge in his ruling expressed concern that the term "hostage" was not defined in the statute, we note that Neuman did not raise any argument at trial or in his brief challenging this term.

to his conduct, he contended he has standing to challenge the constitutionality of section 24–13–450.

Even if Neuman correctly interprets the term "hostage," his argument does not negate the fact that his conduct still fell within the purview of the statute. As previously stated, an inmate may be found guilty of taking of hostages by an inmate if "acting alone or in concert with others, who by threats, coercion, intimidation, or physical force takes, holds, decoys, or carries away any person *as a hostage or for any other reason whatsoever.*" S.C.Code Ann. § 24–13–450 (2007) (emphasis added). In view of this disjunctive language, the correctional officers in the instant case did not necessarily have to be hostages [5] for Neuman to be convicted of this offense. Instead, Neuman could have been found guilty if he had taken, held, decoyed, or carried away the officers "for any other reason whatsoever." In this case, Neuman admitted he and Waters detained the officers in an effort to escape the correctional facility. Thus, we find Neuman does not have standing because the statute at issue clearly applied to his conduct.

## C.

 Even assuming that Neuman has standing, we hold section 24–13–450 is not unconstitutionally vague.

---

**5.** We note the term "hostage" is not defined in section 24–13–450 or in any other statute within the South Carolina Code. During oral argument, Neuman asserted that "hostage" should be narrowly defined as it has been in other jurisdictions. *See, e.g., Ingle v. State,* 746 N.E.2d 927, 937 (Ind.2001) (holding "a consistent definition of hostage would refer to one who is taken to secure some separate demand from another party"); *Jenkins v. State,* 248 S.W.3d 291, 297 (Tex.App.2007) (concluding the term "hostage" within the aggravated kidnapping statute means "the unlawful taking, restraining or confining of a person with the intent that the person, or victim, be held as security for the performance, or forbearance, of some act by a third person"). In contrast, the State argued that the term should be broadly defined as it is generally understood. Specifically, the State asserted "hostage" should be defined as "one that is involuntarily controlled by an outside influence." This definition may be found at *http://www.merriam-webster.com/dictionary/hostage.*

Because Neuman has not claimed the evidence was insufficient to support his conviction, particularly with respect to the hostage element, we decline at this juncture to adopt a definition of "hostage" within the context of section 24–13–450.

First, we find a person of ordinary intelligence and judgment would be sufficiently apprised of conduct that would come within the purview of the statute. Clearly, one who is incarcerated in a correctional facility is aware of his status as an inmate and conduct the statute makes criminal. Because an inmate is undoubtedly cognizant of conduct that constitutes even minor infractions in a correctional facility, it would be difficult to conceive that an inmate would have to guess that taking someone by physical force, threats, coercion or intimidation and holding them as a hostage or for any other reason would not be conduct proscribed by section 24–13–450.

Secondly, the fact that the term "unlawful" is not referenced in section 24–13–450 does not deem the statute unconstitutionally vague. In support of his argument, Neuman compares section 24–13–450 with the kidnapping statute.[6] Because the kidnapping statute includes the terms "unlawfully" and "without authority of law," Neuman avers the specific language of the kidnapping statute, unlike section 24–13–450, excludes lawful activity.

In support of this contention, Neuman relies on this Court's decision in *State v. Smith*, 275 S.C. 164, 268 S.E.2d 276 (1980). In *Smith*, this Court held the kidnapping statute was not unconstitutionally vague. In so holding, this Court stated, "[t]he terms of [the kidnapping] statute are clear and unambiguous. It proscribes the forceful seizure, confinement or carrying away of another against his will without authority of law." *Id.* at 166, 268 S.E.2d at 277.

Comparing section 24–13–450 with the kidnapping statute, we find section 24–13–450 supersedes as a specific statute the general criminal offense statute of kidnapping. *See State v. Davis*, 48 Wash.2d 513, 294 P.2d 934, 936 (1956) (analyzing statutes designated to define offenses chargeable to prisoners of penal institutions with other offenses chargeable to "any

---

6. Section 16–3–910 provides:

Whoever shall unlawfully seize, confine, inveigle, decoy, kidnap, abduct or carry away any other person by any means whatsoever without authority of law, except when a minor is seized or taken by his parent, is guilty of a felony and, upon conviction, must be imprisoned for a period not to exceed thirty years unless sentenced for murder as provided in Section 16–3–20.

S.C.Code Ann. § 16–3–910 (2003).

person," and concluding specific statute relating to prisoners would "supersede the kidnapping statute, if ever applicable, in the situation where an inmate of a state penal institution holds or participates in holding an officer of that institution as a hostage by force or violence or the threat thereof"); *see also Rainey v. State,* 307 S.C. 150, 414 S.E.2d 131 (1992) (recognizing general principle that more recent and specific legislation supersedes prior general law); *State v. Brown,* 289 S.C. 581, 347 S.E.2d 882 (1986) (noting laws giving specific treatment to a given situation take precedence over general laws on same subject, and later legislation takes precedence over earlier laws).

Moreover, a review of both statutes reveals that section 24–13–450 essentially incorporates all of the elements of kidnapping but confines the proscribed conduct to the limited environment of a correctional facility. *See State v. East,* 353 S.C. 634, 637, 578 S.E.2d 748, 750 (Ct.App.2003) ("South Carolina's kidnapping statute requires proof of an unlawful act taking one of several alternative forms, including seizure, confinement, inveiglement, decoy, kidnapping, abduction, or carrying away."); *see generally* Don F. Vaccaro, Annotation, *Seizure of Prison Official By Inmates as Kidnapping,* 59 A.L.R.3d 1306 (1974 & Supp.2008) (discussing cases in which courts have consider the issue of whether and under what circumstances the seizure of a prison official by the inmates of a penal institution constitutes the offense of kidnapping).

Because section 24–13–450, which is part of Title 24 of the South Carolina Code regulating "Corrections, Jails, Probations, Paroles and Pardons," was intended to define offenses specific to prisoners of penal institutions, the conduct proscribed in the statute is by implication unlawful. *Davis,* 294 P.2d at 937 (recognizing that "[u]nless the intended victims of a defendant who is an inmate of a state penal institution, and of his co-conspirators, are officers of a state penal institution, [the statute] would have no application").

Notably, statutes from other jurisdictions which regulate the taking of a hostage by an inmate also do not include the "unlawful" element. *See, e.g.,* Mass. Gen. Laws Ann. ch. 127, § 38A (2002) ("Any prisoner in any penal or reformatory institution who holds any officer or employee of such institu-

tion or any other person as a hostage shall be punished by imprisonment in the state prison for not more than twenty years."); Mich. Comp. Laws Ann. § 750.349a (2004) ("A person imprisoned in any penal or correctional institution located in this state who takes, holds, carries away, decoys, entices away or secretes another person as a hostage by means of threats, coercion, intimidation or physical force is guilty of a felony and shall be imprisoned in the state prison for life, or any term of years, which shall be served as a consecutive sentence."); Wash. Rev.Code Ann. § 9.94.030 (2003 & Supp. 2008) ("Whenever any inmate of a correctional institution shall hold, or participate in holding, any person as a hostage, by force or violence, or the threat thereof, or shall prevent, or participate in preventing an officer of such institution from carrying out his or her duties, by force or violence, or the threat thereof, he or she shall be guilty of a class B felony and upon conviction shall be punished by imprisonment in a state correctional institution for not less than one year nor more than ten years.").

Finally, we believe a conclusion that section 24–13–450 is constitutional comports with the legislative purpose underlying this statute. The General Assembly properly exercised its police power with the intention of protecting correctional officers by promulgating a distinct offense applicable solely to inmates. *Cf. Guinyard*, 260 S.C. at 226–228, 195 S.E.2d at 396 (finding statute prohibiting sexual intercourse with a patient or trainee of mental health facility was neither constitutionally vague nor defective despite Legislature's failure to make knowledge of the institutional status of the person molested an element of the offense).

Additional support for this analysis may be seen in this Court's finding that the prison riot statute,[7] which is also included in Title 24 of the South Carolina Code and omits the term "unlawful," is not unconstitutionally vague. *See State v.*

---

7. Section 24–13–430 provides in relevant part:
 Any inmate of the Department of Corrections, city or county jail, or public works of any county that participates in a riot or any other acts or violence shall be deemed guilty of a felony and upon conviction shall be imprisoned for not less than five years nor more than ten years.
 S.C.Code Ann. § 24–13–430(2) (2007).

*Greene,* 255 S.C. 548, 560, 180 S.E.2d 179, 185 (1971) (holding "prison riot statute," the pre-cursor to section 24–13–430, was not unconstitutionally vague in that it did not define the crime of "riot" given the statute in question was directed at prisoners and the common law offense of riot was well established by judicial definition and, therefore, "understood by the ordinary man").

## CONCLUSION

We hold that section 24–13–450, proscribing conduct for the offense of taking of hostages by an inmate, is not unconstitutionally vague. Accordingly, we affirm Neuman's conviction and sentence.

**AFFIRMED.**

TOAL, C.J., WALLER and KITTREDGE, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES.

I agree that the issue whether the statute is void for vagueness is preserved for our review since that is what the trial judge believed was being argued, and that is what he ruled upon. Moreover, I agree that appellant lacks standing to challenge the statute because his conduct clearly falls within its terms. *In re Amir X.S.,* 371 S.C. 380, 639 S.E.2d 144 (2006). I would end the analysis here. *Id.* Finally, it is well-settled that an issue, unless a claim of lack of subject matter jurisdiction, cannot be raised for the first time at oral argument. *S.C. Dep't of Soc. Serv. v. Basnight,* 346 S.C. 241, 551 S.E.2d 274 (Ct.App.2001). I therefore do not join the remainder of the majority's discussion.

I concur in the decision to affirm appellant's appeal.