# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Don Weaver, Appellant,

v.

Recreation District, Recreation Commission of Richland County, Paul Brawley, as Auditor of Richland County and David A. Adams, as Treasurer of Richland County, Respondents.

Appellate Case No. 2019-000920

––––––––––––

Appeal from Richland County
L. Casey Manning, Circuit Court Judge

––––––––––––

Opinion No. 27991
Heard February 11, 2020 – Filed September 2, 2020

––––––––––––

**AFFIRMED**

––––––––––––

John E. Schmidt III and Melissa J. Copeland, of Schmidt & Copeland, LLC, of Columbia, for Appellant.

Charles H. McDonald and William C. Dillard Jr., of Belser & Belser, PA, of Columbia, for Respondents Recreation District and Recreation Commission of Richland County; and Bradley T. Farrar, of Richland County Attorney's Office, of Columbia, for Respondents Paul Brawley and David A. Adams.

––––––––––––

**CHIEF JUSTICE BEATTY:** Don Weaver ("Appellant") brought this declaratory judgment action to challenge the constitutionality of S.C. Code Ann. section 6-11-271 (2004), which addresses the millage levied in certain special purpose districts. The circuit court found Appellant failed to meet his burden of establishing any constitutional infirmity. We affirm.

## I. FACTS

Appellant owns property and is a taxpayer in the Recreation District, a special purpose district created to fund the operation and maintenance of parks and other recreational facilities in the unincorporated areas of Richland County. The Recreation Commission of Richland County, which oversees those facilities, is governed by an appointed board of commissioners. Richland County's Auditor and Treasurer administer the levy and collection of taxes for the Recreation District, as well as Richland County.

Appellant instituted this action in 2017 against the Recreation District, the Commission, the Auditor, and the Treasurer (collectively, "Respondents"), seeking a declaration that Act No. 397, 1998 S.C. Acts 2389, in particular the part that added section 6-11-271, violates several provisions of the South Carolina Constitution, including article X, section 5 (prohibiting taxation without representation); article III, section 34 (prohibiting special legislation); and article VIII, section 7 (regarding Home Rule by counties), as well as the Home Rule Act, S.C. Code Ann. sections 4-9-10 to -1230 (1986 & Supp. 2019).

Section 6-11-271 was added by the South Carolina General Assembly for the stated purpose of clarifying the authority of certain special purpose districts—those without elected governing bodies—to levy millage and provide governmental services after this Court found another provision, Act No. 317, 1969 S.C. Acts 382, was unconstitutional. In *Weaver v. Recreation District*, a case that was also instituted by Appellant, the Court held Act No. 317 violated the prohibition on taxation without representation because it authorized the levying of taxes on property in a special purpose district without any oversight by an elected body. 328 S.C. 83, 87, 492 S.E.2d 79, 81–82 (1997) (citing S.C. Const. art. X, § 5).

The Court held "the legislative power to tax may not be conferred on a purely appointive body but must be under the *supervisory control* of elected bodies . . . ." *Id.* at 86, 492 S.E.2d at 81 (emphasis added). The Court reasoned "the power to fix and levy a tax should only be conferred upon a body which stands as the direct representative of the people, to the end that an abuse of power may be directly

corrected by those who must carry the burden of the tax." *Id.* (quoting *Crow v. McAlpine*, 277 S.C. 240, 244–45, 285 S.E.2d 355, 358 (1981)). The Court concluded Act No. 317 was an impermissible delegation of legislative authority because it gave "the Recreation Commission *the complete discretion* to determine its annual budget, and to levy anywhere from one to five mills taxes to meet its budget." *Id.* at 87, 492 S.E.2d at 81 (emphasis added). The Court recognized that its holding could disrupt the financial operation of numerous special purpose districts, boards, and commissions throughout the state, so it applied the decision prospectively (beginning December 31, 1999), "to give the General Assembly an opportunity to address this problem." *Id.* at 87–88, 492 S.E.2d at 82.

In response to *Weaver*, the General Assembly added section 6-11-271 of the South Carolina Code in 1998. *See* S.C. Code Ann. § 6-11-271 (2004) ("Millage levy for special purpose district."). Subsection (A) defines the term "special purpose district" to mean any special purpose district or public service authority, however named, created by the General Assembly prior to March 7, 1973. *Id.* § 6-11-271(A).

Subsections (B) and (C) apply only to special purpose districts whose "governing bodies . . . are not elected but are presently authorized by law to levy [millage] for operations and maintenance." *Id.* § 6-11-271(B)(1), (C)(1). Subsection (B) concerns districts that were then authorized to levy millage up to a certain limit, and (C) concerns districts then having no limit as to the millage amount. *Id.* The General Assembly instructed that, beginning in fiscal year 1999, "[t]here must be levied annually in each special purpose district described" (i.e., those described in (B)(1) and (C)(1)), tax millage equal to the amount imposed in fiscal year 1998. *Id.* § 6-11-271(B)(2), (C)(2).

The General Assembly outlined several methods for a special purpose district to attempt to alter this tax millage. Subsection (D) provides a special purpose district may request that the county election commission conduct a referendum proposing a modification of the millage. *Id.* § 6-11-271(D). If the voters approve, the "modification in tax millage shall remain effective until changed in a manner provided by law." *Id.*

Subsection (E) authorizes all special purpose districts located wholly in one county to modify their millage limits, "provided the same is first approved by the governing body of the district *and by the governing body of the county* in which the district is located by resolutions duly adopted." *Id.* § 6-11-271(E)(1) (emphasis added). However, any modification is only temporary, as the General Assembly

stipulated that "[a]ny increase in millage effectuated pursuant to this subsection is effective *for only one year*." *Id.* (emphasis added).

Appellant alleged in his complaint in the current action that the addition of section 6-11-271 still imposes taxation without representation because it allows the Commission, an appointed body, to levy taxes on property within the Recreation District without any oversight from elected representatives, and he further alleged the statute is special legislation that violates Home Rule. The circuit court ruled Appellant did not meet his burden of establishing any constitutional infirmity, finding the statute (1) does not impose taxation without representation, (2) is not special legislation, and (3) does not violate Home Rule. Appellant challenges all three findings by the circuit court.[1]

## II.  STANDARD OF REVIEW

"This Court has a very limited scope of review in cases involving a constitutional challenge to a statute." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999). "All statutes are presumed constitutional and will, if possible, be construed so as to render them valid." *Id.* "A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Id.* (citing *Westvaco Corp. v. S.C. Dep't. of Revenue*, 321 S.C. 59, 467 S.E.2d 739 (1995)). "A possible constitutional construction must prevail over an unconstitutional interpretation." *State v. Neuman*, 384 S.C. 395, 402, 683 S.E.2d 268, 271 (2009) (citation omitted).

## III.  DISCUSSION

### A.    Taxation without Representation

Appellant first argues section 6-11-271 is unconstitutional because it violates the South Carolina Constitution's prohibition on taxation without representation.

---

[1] The Auditor and the Treasurer filed a joint brief taking no position on the statute's validity and stating they would abide by the Court's decision in the performance of their ministerial duties. Accordingly, references to the arguments of Respondents hereinafter shall refer to the Recreation District and the Commission, which filed a joint brief supporting the circuit court's ruling.

Article X, section 5, of our state constitution provides, in relevant part: "No tax . . . shall be established . . . without the consent of the people or their representatives lawfully assembled." S.C. Const. art. X, § 5.

Appellant argues the General Assembly's passage of section 6-11-271 "is inconsistent in part with *Weaver*" and should, therefore, be invalidated. He notes subsection (B)(1) refers to unelected bodies that "are presently authorized by law to levy for operations and maintenance," but under *Weaver*, "unelected bodies are not authorized to levy taxes," so the General Assembly's enactment "did not correct the taxation without representation issue . . . and instead reiterated and relied on the very provisions that were struck by the Court as unconstitutional."

Appellant further argues subsections (B)(2) and (C)(2) "initially appear to have millage rates set by statute and, consequently, by the General Assembly," but they use the amount imposed in fiscal year 1998, which is the rate impermissibly imposed prior to *Weaver*, so "the taxation without representation by the Commission is made permanent by statute."

Appellant asserts that, in addition to the problem of using the millage amounts originally set by the unelected bodies, an additional problem exists in subsection (E)(1) because it states millage limitations may be modified "provided the same is first approved by the governing body of the district and by the governing body of the county in which the district is located by resolutions duly adopted." Appellant maintains subsection (E)(1) "therefore provides that the unelected bodies previously setting millage rates are kept in a position of authority as to require that these unelected bodies first approve any change in the millage rates." Appellant states, "This makes the authorized, governing body of a district directly responsible to the very unelected bodies that are not authorized to set millage rates due to such being a violation of taxation without representation."

Finally, Appellant contends "[t]he special legislation continues the current [funding] rate to infinity" because "taxpayers have no recourse to seek to reduce this funding and they have no public, elected body to seek redress for grievances related to the use of those levied funds."

We hold Appellant has not met his heavy burden of proving section 6-11-271 imposes taxation without representation in violation of article X, section 5, of the South Carolina Constitution. *See Bodman v. State*, 403 S.C. 60, 66, 742 S.E.2d 363, 366 (2013) ("The party challenging the statute bears the heavy burden of proving that 'its repugnance to the constitution is clear and beyond a reasonable doubt.'"

(quoting *In re Treatment & Care of Luckabaugh*, 351 S.C. 122, 134–35, 568 S.E.2d 338, 344 (2002)).

In enacting the statute, the General Assembly, not the Commission, created the (initial) tax to be imposed in special purpose districts. There can be no question that the General Assembly is a body of duly elected, direct representatives of the people of South Carolina. *See, e.g.*, *Crow v. McAlpine*, 277 S.C. 240, 244, 285 S.E.2d 355, 358 (1981) ("The taxing power is one of the highest prerogatives of the General Assembly. Members of this body are chosen by the people to exercise the power in a conscientious and deliberate manner. If this power is abused, the people could, at least, prevent a recurrence of the wrong at the polls."); *Trs. of Wofford Coll. v. City of Spartanburg*, 201 S.C. 315, 321, 23 S.E.2d 9, 11 (1942) (stating "[t]he power of taxation is a legislative power, and knows no limitations, except those imposed expressly or by plain implication in the State or Federal Constitution," and noting "[t]he legislative power of the people of the State of South Carolina is vested in the General Assembly").

Appellant's assertion that the General Assembly somehow created a permanent situation of taxation without representation because it chose to implement the rates previously used in the various districts is without merit. In electing to set the initial millage at an amount equivalent to the most-recent fiscal year levels, the General Assembly exercised its own authority to impose the taxes based on a logical starting point, and it was a decision made by an elected body whose members are the direct representatives of the people.[2] *See Crow*, 277 S.C. at 244, 285 S.E.2d at 358 (stating an abuse of the General Assembly's taxing power is subject to the response of taxpayers at the polls); *accord Weaver*, 328 S.C. at 86, 492 S.E.2d at 81.

---

[2] To the extent Appellant also more narrowly maintains section 6-11-271 improperly continues the millage rate "fixed by legislators elected by taxpayers from counties other than Richland County," because "every member of the legislature elected by Richland County taxpayers could have voted against Section 6-11-271 and it would have passed," we note Appellant did not plead this assertion as a basis for relief in his complaint, and it was not ruled on by the circuit court. Consequently, it is not properly before this Court. Although not bearing on our decision, the assertion is without merit, in any event, as the enactment of section 6-11-271 affects all similarly situated special purpose districts—and their taxpayers—throughout the state, not just those in Richland County. As noted above, members of the General Assembly are the duly elected, direct representatives of the people, and there is direct recourse by taxpayers for any abuse of this legislative authority.

Further, as noted by Respondents, "[t]he reference in § 6-11-271(B)(1) to unelected special purpose districts 'presently authorized by law to levy for operations' was clearly nothing more than a reasonable means to identify the class of entities affected by the opinion." Respondents correctly observe, "[T]he prospective application of <u>Weaver</u> had not yet taken effect when the statute was enacted," and "[t]he <u>Weaver</u> opinion itself [328 S.C. at 85, 492 S.E.2d at 80] used similar language, stating that 'Act No. 317 authorizes the Recreation Commission, in pertinent part . . . [t]o levy upon all the taxable property in the District a tax.'" We agree that the statutory language simply identified the relevant entities that were affected by the *Weaver* decision. The reference to special purpose districts with *unelected* boards is clearly warranted and comprises a proper class that may be distinguished from *elected* special purpose districts because elected special purpose districts retained their constitutional authority to levy taxes on property within their boundaries. Thus, the statute necessarily addresses the issues affecting districts with unelected governing boards.

As to Appellant's contention that the statute allows the approval of temporary millage modifications by the Commission along with county council, Respondents concede that subsection (E)(1) "does provide unelected governing bodies a limited procedural role in decisions to temporarily modify millage rates, [but] per the statute this can only be done with the approval of the elected governing body of the county in which the district is located." Respondents state: "In other words, any increase in the rate must be approved by the county council initially and then again on a recurring annual basis. An unelected special purpose district has no power to unilaterally increase the rate or preserve such an increase without the consent of county council."

Although Appellant asserts subsection (E)(1) of the statute requires unelected bodies to first approve any change in millage rates, we find Appellant's argument on this point is misleading. Subsection (E)(1) does not state that the Commission must first approve a change in millage rates, without further qualification or restriction. Rather, it provides a special purpose district located entirely in one county is authorized to temporarily modify its millage limitation for one year "provided the same is *first approved* [1] by the governing body of the district *and* [2] by the governing body of the county in which the district is located by resolutions duly adopted." S.C. Code Ann. § 6-11-271(E)(1) (emphasis added). Thus, any modification sought by a special purpose district must *first* be approved by *both* the governing body of the district and the county council. A district may not unilaterally make any modifications; any modification requires the approval of county council, a duly elected, representative body.

While the statute could have been worded to perhaps state that any modification *requested* by a district may not be implemented without the approval of county council, we recognize that if there is any way to construe a statute in a way that is constitutional, it is a court's task to do so. *See Joytime Distribs. & Amusement Co.*, 338 S.C. at 640, 528 S.E.2d at 650 ("All statutes are presumed constitutional and will, if possible, be construed so as to render them valid."). With this directive in mind, we believe the reference to the district in this context merely reflects the reality that the Recreation District is an entity that can act only through its governing body, the Commission, and if the Commission would like to modify the millage (i.e., the governing board of the Recreation District approves of a modification), the modification can be implemented *only* with the oversight and approval of Richland County Council.

The General Assembly's manifest intent is that a special purpose district must obtain the approval of the elected governing body of the county, e.g., county council, before any modification in millage may occur. *Cf., e.g.*, *Spartanburg Sanitary Sewer Dist. v. City of Spartanburg*, 283 S.C. 67, 74, 321 S.E.2d 258, 262 (1984) ("In the construction of statutes, the dominant factor is the intent, not the language of the legislature. *Abell v. Bell,* 229 S.C. 1, 91 S.E.2d 548 (1956). A statute must be construed in light of its intended purposes, and, if such purpose can be reasonably discovered from its language, the purpose will prevail over the literal import of the statute."); *S.C. State Bd. of Dental Exam'rs v. Breeland*, 208 S.C. 469, 480, 38 S.E.2d 644, 650 (1946) ("We have recently held that choice of language in an act 'will not be construed with literality when that would defeat the manifest intention of the lawmakers' and that the court will reject the ordinary meaning of words used in a statute 'when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature.'" (citation omitted)).

Because no change may actually occur without the express approval of county council, an elected body, the prohibition against taxation without representation is not implicated here, as any rate change is, in fact, subject to the supervision of an elected body, and no modification may be made without the approval of that elected body. *See Weaver*, 328 S.C. at 86, 492 S.E.2d at 81 (stating "the legislative power to tax may not be conferred on a purely appointive body but must be under the *supervisory control* of elected bodies" (emphasis added)).

The South Carolina Constitution expressly requires a liberal construction of the constitution and laws governing local government, and it provides the "[p]owers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this

Constitution." S.C. Const. art. VIII, § 17. In this case, there has been no evidence that Richland County Council has been precluded in any way from fully exercising any powers fairly implied and not prohibited by the state constitution, including the power of taxation. Subsection (E)(1) operates as a restriction on the ability of certain special purpose districts to seek or obtain a temporary modification in millage; it does not purport to be a limitation on the powers of a county's governing body. *See* S.C. Code Ann § 6-11-271(E)(1) ("All *special purpose districts* located wholly within a single county . . . are authorized to modify their respective millage limitations, *provided* the same is first approved by the governing body of the district and *by the governing body of the county* . . . ." (emphasis added)).

Moreover, as found by the circuit court, taxpayers in the Recreation District (and in other districts receiving funding under section 6-11-271), do have additional means of recourse if they disagree with any modifications made in millage. Taxpayers may seek a referendum on whether to dissolve a special purpose district or to establish an elected board to govern a special purpose district.[3]

For all of the foregoing reasons, we conclude Appellant has not shown the circuit court erred in finding Appellant failed to prove section 6-11-271 violates the constitutional prohibition on taxation without representation.

## B.    Special Legislation

Appellant next contends section 6-11-271 does not affect all counties equally and is, therefore, special legislation that is prohibited by the South Carolina Constitution.

Article III, section 34, provides the General Assembly shall not enact local or special laws concerning an enumerated list of subjects (several specific subjects are set forth therein). S.C. Const. art. III, § 34(I to VII). Section 34 further provides: "In all other cases, where a general law can be made applicable, no special law shall be enacted." *Id.* § 34(IX). However, section 34 additionally states that "[n]othing contained in this section shall prohibit the General Assembly from enacting special provisions in general laws." *Id.* § 34(X).

"A general law is one that applies to the entire State and operates wherever the specified conduct takes place." *Town of Hilton Head Island v. Morris*, 324 S.C.

---

[3] *See* S.C. Code Ann. § 6-11-2020 (2004) (procedure for referendum on dissolution of a special purpose district); *id.* § 6-11-350 (procedure for referendum on whether to elect members of the governing body of a special purpose district).

30, 34, 484 S.E.2d 104, 107 (1997). "A law is general when it applies uniformly to all persons or things within a proper class, and special when it applies to only one or more individuals or things belonging to that same class." *Kizer v. Clark*, 360 S.C. 86, 92, 600 S.E.2d 529, 532 (2004). The overall purpose of the prohibition on special legislation "is to prevent discrimination and to assure that all persons are treated equally." *Thompson v. S.C. Comm'n on Alcohol & Drug Abuse*, 267 S.C. 463, 471, 229 S.E.2d 718, 722 (1976).

"The language of the Constitution which prohibits a special law where a general law can be made applicable[] plainly implies that there are or may be cases where a special Act will best meet the exigencies of a particular case, and in no wise be promotive of those evils which result from a general and indiscriminate resort to local and special legislation." *Horry Cty. v. Horry Cty. Higher Educ. Comm'n*, 306 S.C. 416, 419, 412 S.E.2d 421, 423 (1991) (quoting *Duke Power Co. v. S.C. Pub. Serv. Comm'n*, 284 S.C. 81, 90, 284 S.E.2d 395, 400 (1985)). "In other words, the General Assembly must have a 'logical basis and sound reason' for resorting to special legislation." *Id.* (quoting *Gillespie v. Pickens Cty.*, 197 S.C. 217, 225, 14 S.E.2d 900, 904 (1941)).

Appellant highlights the language in subsections (B)(1) and (C)(1)—which state subsections (B) and (C) apply "only to those special purpose districts, the governing bodies of which are not elected"—and argues that, because they apply only to certain classes of special purpose districts in South Carolina (i.e., those with *unelected* governing bodies), the provisions are unconstitutional special legislation. *See* S.C. Code Ann. § 6-11-271(B)(1), (C)(1).

Noting the far-reaching and disruptive effect the lack of funding could have on special purpose districts following *Weaver*, this Court intentionally made the application of the decision prospective only to enable the General Assembly to implement appropriate responsive legislation. We agree with the circuit court that the special purpose districts with unelected governing boards affected by the *Weaver* decision "are clearly a proper class subject to the enactment of uniformly applicable general legislation." As noted by the circuit court, after *Weaver*, "elected special purpose districts, unlike unelected districts such as the Recreation Commission, retained constitutional authority to levy taxes on duly represented constituents." As a result, targeting the special purpose districts with unelected governing boards in section 6-11-271 was a necessary and logical basis on which to make a distinction, and the General Assembly treated all districts with this characteristic as a uniform class.

The General Assembly was clearly justified in its enactment of this remedial legislation, and it did not cross constitutional boundaries. This general legislation affects all special purpose districts with unelected governing bodies throughout the state, so the legislation is applied uniformly to a valid class of entities. As a result, we hold section 6-11-271 is not impermissible special legislation.[4] *See Kizer*, 360 S.C. at 92, 600 S.E.2d at 532 (stating a law that applies uniformly to all things within a proper class is a general law); *cf. Bd. of Trs. for Fairfield Cty. Sch. Dist. v. State*, 409 S.C. 119, 125–26, 761 S.E.2d 241, 245 (2014) (observing "where a special law will best meet the exigencies of a particular situation, it is not unconstitutional" (footnote omitted)).

## C. Home Rule

Appellant lastly argues section 6-11-271 is void because it violates Home Rule as set forth in the state constitution and the Home Rule Act. *See generally* S.C. Const. art. VIII, § 7 (organization of counties); S.C. Code Ann. §§ 4-9-10 to -1230 (1986 & Supp. 2019) (Home Rule Act).

Article VIII of the South Carolina Constitution was revised in 1973 and "reflects a serious effort upon the part of the electorate and the General Assembly to restore local government to the county level." *Knight v. Salisbury*, 262 S.C. 565, 568–69, 206 S.E.2d 875, 876 (1974). Section 7 of article VIII required the General Assembly (1) to pass general laws delineating "the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided"; and (2) to set forth no more than five alternative forms of county government. S.C. Const. art. VIII, § 7; *see also* James Lowell Underwood, *The Constitution of South Carolina, Vol. II: The Journey Toward Local Self-Government* 165 (1989) (discussing the impact of the amendment and Home Rule). Section 7 prohibits the enactment of special laws affecting "a specific county": "No laws for a specific county shall be enacted and no county shall be

---

[4] While Appellant also posits assertions as to S.C. Code Ann. section 6-11-70 (2004) (regarding the election dates for special purpose districts with elected governing bodies), we find this statute is not relevant to his constitutional arguments concerning section 6-11-271 and note it was not pled as a basis for relief in Appellant's complaint.

exempted from the general laws or laws applicable to the selected alternative form of government."[5]  S.C. Const. art. VIII, § 7.

The Home Rule Act passed by the General Assembly, which went into effect in 1975, dealt with these issues in a comprehensive manner.  Underwood, *supra*, at 165; *see also Graham v. Creel*, 289 S.C. 165, 166, 345 S.E.2d 717, 718 (1986) (stating the General Assembly passed Act No. 288, 1975 S.C. Acts 692, the Home Rule Act, to advance the aims of the 1973 constitutional amendment).  The Home Rule Act provides, for example, that counties have the authority "to assess property and levy ad valorem property taxes and uniform service charges, including the power to tax different areas at different rates related to the nature and level of governmental services provided . . . ."  S.C. Code Ann. § 4-9-30(5)(a) (Supp. 2019).

The circuit court found the Home Rule Act sets forth the organization and powers of county government,[6] but it does not attempt to restrict general legislation regarding special purpose districts.  In fact, section 4-9-80 of the Home Rule Act specifically states the Act does not alter the functions of existing special purpose districts or the authority of the General Assembly to pass legislation regarding such districts:

> The provisions of this chapter shall not be construed to devolve any additional powers upon county councils with regard to public service districts, special purpose districts, water and sewer authorities, or other political subdivisions by whatever name designated, (which are in existence on the date one of the forms of government provided for in this chapter becomes effective in a particular county) and such political subdivisions shall continue to perform their statutory functions prescribed in

---

[5] "Historically, the vast majority of special purpose districts in South Carolina were created [by the General Assembly] in order to provide water or sewer services in areas within [a] county," but this power is now given to the counties by article VIII, so "there is no longer a need for special state laws to create this type of district." *Knight*, 262 S.C. at 574, 206 S.E.2d at 878–89.

[6] *See* S.C. Code Ann. § 4-9-310 (1986) (outlining the authority of alternative forms of county government).

laws creating such districts or authorities except as they
may be modified by act of the General Assembly . . . .

S.C. Code Ann. § 4-9-80 (1986).

The circuit court observed that, in section 6-11-271, "the General Assembly merely enacted another general law regarding this form of local government." The circuit court concluded, "The Home Rule Act does not affect the [General Assembly's] authority to enact such general laws affecting special purpose districts. Likewise, the Home Rule constitutional amendment, Art. VIII, § 7, allows the General Assembly to enact general legislation affecting existing special purpose districts."

Appellant summarily argues that this Court has held the Home Rule Act's prohibition on special legislation does not operate retroactively to abolish all special legislation that was in effect prior to the enactment of the Home Rule Act, but it does void special legislation passed thereafter, citing *Graham*.[7] Appellant maintains section 6-11-271 violates the Home Rule Act and is unconstitutional and thus, void, because under Home Rule the governing and taxing power for Richland County is found in the elected members of its county council, not special legislation that affects only a specific county.

The wording in *Graham* was a recognition that a particular county cannot be singled out for exemption from the general law. We agree with the circuit court that in section 6-11-271, the General Assembly simply enacted a general law regarding special purpose districts, and Home Rule does not restrict the power of the General Assembly to enact general laws governing existing special purpose districts. We find the statute does not affect only a particular county (or district), as alleged by Appellant, because it applies to a broad class of districts having similar characteristics. Moreover, contrary to Appellant's contention, the Richland County Council does retain its authority over taxation, as no modification in millage can be made by the Recreation District without its approval, as previously discussed in Section III(A) of this opinion. Consequently, section 6-11-271 does not violate the provisions of Home Rule.

---

[7] *See Graham*, 289 S.C. at 168, 345 S.E.2d at 719 ("The Home Rule Act, while preventing the General Assembly from enacting 'special legislation' and voiding any 'special legislation' which contradicts the general law, does not operate retroactively to abolish all 'special legislation' which was in effect in South Carolina prior to the enactment of the Home Rule Act.").

## IV. CONCLUSION

Appellant has failed to show the circuit court erred in its analysis or its determination that section 6-11-271 does not violate the constitutional prohibitions on taxation without representation and special legislation, nor does it violate Home Rule. As a result, we affirm the order of the circuit court.

**AFFIRMED.**

**KITTREDGE, HEARN, FEW and JAMES, JJ., concur.**