742 S.E.2d 363

**Matthew BODMAN, Plaintiff,**

v.

**STATE of South Carolina and South Carolina Department of Revenue, Defendants.**

Appellate Case No. 2011–187466.

No. 27248.

Supreme Court of South Carolina.

Heard Nov. 29, 2011.

Decided May 8, 2013.

A. Camden Lewis and Ariail E. King, both of Lewis, Babcock & Griffin LLP, of Columbia, and Richard A. Harpootlian, of Richard A. Harpootlian, PA, of Columbia, for Plaintiff.

Attorney General Alan Wilson, Deputy Attorney General Robert D. Cook, and Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia, and Ray N. Stevens, Parker Poe Adams & Bernstein, LLP, of Columbia, for Defendant State of South Carolina.

Milton G. Kimpson, Carol I. McMahan, Adam I. Marinelli, Sarah A. Powell, and Harry T. Cooper, Jr., all of Columbia, for Defendant South Carolina Department of Revenue.

Bradley S. Wright and Charles F. Reid, both of Columbia, for Amici Curiae Robert W. Harrell, Jr., in his official capacity as Speaker of the South Carolina House of Representatives, and W. Brian White, in his official capacity as Chairman of the

South Carolina House of Representatives Ways and Means Committee.

Michael R. Hitchcock, John P. Hazzard, V, and Robert E. Maldonado, all of Columbia, for Amici Curiae Glenn F. McConnell, in his official capacity as President Pro Tempore of the South Carolina Senate, and Hugh K. Leatherman, in his official capacity as Chairman of the South Carolina Senate Finance Committee.

Burnet Rhett Maybank, III, of Nexsen Pruet, LLC, of Columbia, for Amicus Curiae South Carolina Manufacturers Alliance.

John C. von Lehe, Jr. and Bryson M. Geer, of Nelson Mullins Riley & Scarborough LLP, of Charleston, for Amicus Curiae Council on State Taxation.

Justice HEARN.

Mark Twain once quipped, "What is the difference between a taxidermist and a tax collector?  The taxidermist takes only your skin."  Not necessarily so, according to Matthew Bodman.  In this action brought in our original jurisdiction, Bodman alleges that the sheer number of exemptions to and caps on this State's sales and use tax removes any rational relationship they have to the underlying tax itself.  He therefore requests that we strike down all of the exemptions and caps as being unconstitutional, leaving behind only the imposition of the tax.  In particular, he contends that the entire exemption and cap scheme violates our State constitution's equal protection guarantee and prohibition against special legislation.  We disagree.

## FACTUAL/PROCEDURAL BACKGROUND

The facts of this case are simple and not in dispute.  Bodman is a resident and taxpayer of Richland County, South Carolina.  He is also the proud father of two young children, who presently are not yet old enough to attend public school.  Ostensibly, he is also a consumer of goods subject to this State's sales and use tax.

A state-wide tax totaling six percent is imposed on the sale of all personal property at retail, the proceeds of which are

used to support education. The first part of this tax is a five percent tax imposed by Section 12–36–910 of the South Carolina Code (2000 & Supp.2011). This five percent tax is divided up into a four percent levy and a one percent levy. *Id.* § 12–36–2620 (2000 & Supp.2011). The four percent portion of the tax is credited to the public school building fund. *Id.* § 12–36–2620(1); *id.* § 59–21–1010 (2004). As to the remaining one percent, the funds it raises are deposited into the South Carolina Education Improvement Act of 1984 Fund "as a fund separate and distinct from the general fund of the State." *Id.* § 12–36–2620(2); *id.* § 59–21–1010(B).

On top of this five percent tax, Section 12–36–1110 of the South Carolina Code (Supp.2011) levies an additional one percent sales tax. Revenues derived from this tax are credited to the Homestead Exemption Fund, *id.* § 12–36–1120 (Supp. 2011), which is also separate and distinct from the general fund, *id.* § 11–11–155 (2011). Without delving into too much detail, this fund provides a revenue stream for school districts in lieu of certain property taxes. *See id.* § 11–11–156 (2011).

Over the years, the General Assembly has passed into law a series of exemptions to and caps on the tax imposed by this general scheme. Currently, there are seven caps on the amount of the tax. *Id.* § 12–36–2110 (2000 & Supp.2011). Additionally, there are seventy-eight exemptions from the tax. *Id.* § 12–36–2120 (Supp.2011). These exemptions run the gamut from textbooks used in primary and secondary education, *id.* § 12–36–2120(3) (2000), to water sold by public utilities, *id.* § 12–36–2120(12) (Supp.2011), to electricity used to irrigate crops, *id.* § 12–36–2120(44) (2000), to a certain percentage of the gross proceeds from the rental or lease of portable toilets, *id.* § 12–36–2120(62) (Supp.2011), and to sweetgrass baskets, *id.* § 12–36–2120(64) (Supp.2011). Recent data show that as a result of these numerous exemptions, South Carolina now exempts more sales taxes than it collects.

Spurred on by recent budget concerns and this declining source of revenue for education, Bodman sought our original jurisdiction pursuant to Rule 245, SCACR, to challenge the sales tax exemption and cap scheme. He asks that we strike down the exemptions and caps *in toto* because the number of them has grown to the point where they no longer bear a

rational relationship to the purpose of imposing the tax in the first place. He therefore argues that sections 12–36–2110 and 12–36–2120 violate the equal protection clause and the prohibition against special legislation found in our State's constitution. We accepted this suit in our original jurisdiction.

## STANDARD OF REVIEW

We are reluctant to declare a statute unconstitutional. *In re Treatment and Care of Luckabaugh,* 351 S.C. 122, 134, 568 S.E.2d 338, 344 (2002). Hence, we will make every presumption in favor of finding it constitutional. *Id.* Moreover, if possible, we must construe a statute so that it is valid. *State v. Neuman,* 384 S.C. 395, 402, 683 S.E.2d 268, 271 (2009). The party challenging the statute bears the heavy burden of proving that "its repugnance to the constitution is clear and beyond a reasonable doubt." *Luckabaugh,* 351 S.C. at 134–35, 568 S.E.2d at 344.

## ISSUES PRESENTED

I. Does Bodman have standing to bring this claim?

II. Do sections 12–36–2110 and 12–36–2120 violate the equal protection clause of the South Carolina Constitution?

III. Do sections 12–36–2110 and 12–36–2120 violate the prohibition against special legislation where a general law can be made applicable?

## LAW/ANALYSIS

### I. STANDING

As a threshold matter, the State and the Department of Revenue (collectively, Defendants) assert that Bodman does not have standing to bring this action because he has not suffered an individualized injury. Bodman counters that he has sufficient standing as a taxpayer and under the public importance exception to the individualized injury requirement.

"Standing to sue is a fundamental requirement in instituting an action." *Joytime Distribs. & Amusement Co. v. State,* 338 S.C. 634, 639, 528 S.E.2d 647, 649 (1999). Under

our current jurisprudence, there are three ways in which a party can acquire this fundamental threshold of standing: (1) by statute; (2) through what is called "constitutional standing"; and (3) under the public importance exception. *ATC S., Inc. v. Charleston Cnty.*, 380 S.C. 191, 195, 669 S.E.2d 337, 339 (2008).

■ Bodman does not claim any statute confers standing upon him.[1] As to constitutional standing, one of the core requirements is that the plaintiff suffered a " 'concrete and particularized' " injury. *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Here, to the extent Bodman has suffered or will suffer any harm as a result of this tax scheme, this harm is shared by all taxpayers in the State. In *ATC*, we unanimously closed the door to a litigant asserting standing simply by virtue of his status as a taxpayer for this reason. There, we explained that "[t]he injury to ATC . . . as a taxpayer is common to all property owners in Charleston County. This feature of commonality defeats the constitutional requirement of a concrete and particularized injury." *Id.* at 198, 669 S.E.2d at 340–41 (citing *Frothingham v. Mellon*, 262 U.S. 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (holding that a taxpayer lacks standing when he "suffers in some indefinite way in common with people generally")). We reaffirm this principle today and hold that Bodman's status as a mere taxpayer is insufficient to confer standing upon him.

■■ What remains to be determined is whether Bodman can claim standing under the public importance exception, a rule which "has been the subject of much confusion and misapplication." Jessica Clancy Crowson & C.W. Christian Shea, *Standing in South Carolina: What is Required and Who Has It?*, S.C. Law., July 2009, at 19. Generally speaking,

> a private individual may not invoke the judicial power to determine the validity of an executive or legislative act unless the private individual can show that, as a result of that action, a direct injury has been sustained, or that there is immediate danger a direct injury will be sustained.

---

1. We reject any averment that the fact Bodman is proceeding under the Declaratory Judgment Act has any impact on our standing analysis.

*Joytime Distribs.*, 338 S.C. at 639, 528 S.E.2d at 649–50. However, we have recognized that "standing is not inflexible." *Davis v. Richland Cnty. Council,* 372 S.C. 497, 500, 642 S.E.2d 740, 741 (2007). Thus, "standing may be conferred upon a party when an issue is of such public importance as to require its resolution for future guidance." *Id.* In recent years, we routinely have found standing through this exception. *See Sloan v. Dep't of Transp.,* 379 S.C. 160, 170–71, 666 S.E.2d 236, 241 (2008); *Davis,* 372 S.C. at 500, 642 S.E.2d at 741–42; *Sloan v. Hardee,* 371 S.C. 495, 497 n. 1, 640 S.E.2d 457, 458 n. 1 (2007); *Sloan v. Dep't of Transp.,* 365 S.C. 299, 304, 618 S.E.2d 876, 878–79 (2005); *Sloan v. Wilkins,* 362 S.C. 430, 436–37, 608 S.E.2d 579, 582–83 (2005), *abrogated on other grounds, Am. Petroleum Inst. v. S.C. Dep't of Revenue,* 382 S.C. 572, 677 S.E.2d 16 (2009); *Sloan v. Sanford,* 357 S.C. 431, 434, 593 S.E.2d 470, 472 (2004); *Baird v. Charleston Cnty.,* 333 S.C. 519, 531, 511 S.E.2d 69, 75 (1999).

We tempered the application of the public importance exception somewhat in *ATC.* In doing so, we reminded the bench and bar that "[w]hether an issue of public importance exists necessitates a cautious balancing of the competing interests presented." *ATC,* 380 S.C. at 198, 669 S.E.2d at 341. To avoid an overzealous use of this exception, we said that "[t]he key to the public importance analysis is whether a resolution is needed for future guidance. It is this concept of 'future guidance' that gives meaning to an issue which transcends a purely private matter and rises to the level of public importance." *Id.* at 199, 669 S.E.2d at 341. Moreover, the Supreme Court of the United States recently explained how more limited rules of standing are actually beneficial for the judicial process:

Few exercises of the judicial power are more likely to undermine public confidence in the neutrality and integrity of the Judiciary than one which casts the Court in the role of a Council of Revision, conferring on itself the power to invalidate laws at the behest of anyone who disagrees with them. In an era of frequent litigation, class actions, sweeping injunctions with prospective effect, and continuing jurisdiction to enforce judicial remedies, courts must be more careful to insist on the formal rules of standing, not less so. Making the ... standing inquiry all the more necessary are

the significant implications of constitutional litigation, which can result in rules of wide applicability that are beyond Congress' power to change.

*Ariz. Christian Sch. Tuition Org. v. Winn*, — U.S. —, —, 131 S.Ct. 1436, 1449, 179 L.Ed.2d 523 (2011).

However, we need not revisit the requirements for the public importance exception today because even if Bodman does have standing under it, his claims fail on the merits.

## II.  EQUAL PROTECTION

Bodman's first challenge is that sections 12–36–2110 and 12–36–2120 are unconstitutional because they do not afford equal protection of the laws.  Based on the limited grounds on which Bodman has presented this case to us, we disagree.

The South Carolina Constitution provides that no "person shall be denied the equal protection of the laws." S.C. Const. art. I, § 3. "The *sine qua non* of an equal protection claim is a showing that similarly situated persons received disparate treatment." *Grant v. S.C. Coastal Council*, 319 S.C. 348, 354, 461 S.E.2d 388, 391 (1995); *see also Sloan v. Bd. of Physical Therapy Exam'rs*, 370 S.C. 452, 481, 636 S.E.2d 598, 613 (2006) ("A crucial step in the analysis of any equal protection issue is the identification of the pertinent class. . . ."). Not all classifications are unconstitutional, however, for "[t]he equal protection clause only forbids irrational and unjustified classifications." *Luckabaugh*, 351 S.C. at 147, 568 S.E.2d at 351 (quotation omitted). So long as the statute "does not implicate a suspect class or abridge a fundamental right, the rational basis test is used" to determine whether the classification falls into the prohibited group. *Denene, Inc. v. City of Charleston*, 359 S.C. 85, 91, 596 S.E.2d 917, 920 (2004). A classification will survive rational basis review when it bears a reasonable relation to the legislative purpose sought to be achieved, members of the class are treated alike under similar circumstances, and the classification rests on a rational basis. *Id.*

We give great deference to the General Assembly's decision to create a classification. *Davis v. Cnty. of Greenville*, 313 S.C. 459, 465, 443 S.E.2d 383, 386. Consequently, those who challenge the validity of one under rational basis review must "negate every conceivable basis which

might support it." *Lee v. S.C. Dep't of Natural Res.*, 339 S.C. 463, 470 n. 4, 530 S.E.2d 112, 115 n. 4 (2000). Furthermore, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Id.* The classification also does not need to completely achieve its purpose to withstand constitutional scrutiny. *Id.* Moreover, "[t]he fact that the classification may result in some inequity does not render it unconstitutional." *Davis*, 313 S.C. at 465, 443 S.E.2d at 386.

Accordingly, our entire equal protection inquiry revolves around interplay between the specific classification created and the purported basis for it, with a challenger coming under rational basis review facing a steep hill to climb. As illustrated above, sections 12–36–2110 and 12–36–2120 do not create a single classification each[2]; they create eighty-five between them covering a wide range of commercial activity from the leasing of portable toilets to the sale of textbooks for primary and secondary education. Thus, we are unable to examine the scheme as a whole. Instead, consistent with the principles outlined above, we must determine whether each one of them is supported by any rational basis.

However, Bodman has prevented us from doing so. The argument he advances instead is that the sheer number of exemptions and caps in sections 12–36–2110 and 12–36–2120 has rendered the statutes arbitrary and thus unconstitutional. Moreover, he points to the wide range of transactions which fall under these statutes as evidence of a lack of a "cohesive scheme," which accordingly makes the entire group arbitrary and presumably lacking in a rational basis. Yet, in no uncertain terms he argues that the scheme must stand or fall *as a whole* based *solely* on the number of "patchwork" exclusions and caps. He even went so far as to explicitly decline the Defendants' invitation to examine whether individual exemptions and caps are supported by a rational basis.[3]

---

2. We assume *arguendo* that each cap and exemption would be a classification for equal protection purposes. Additionally, we assume *arguendo* that Bodman has been subjected to disparate treatment as a result of these classifications.

3. In his reply brief, he writes, "the Court cannot make a determination as to the 'adequacy, fairness, and sufficiency' of the various exemptions, but must look at the exemption scheme as a whole."

We rejected this very argument in *Ed Robinson Laundry & Dry Cleaning, Inc. v. South Carolina Department of Revenue*, 356 S.C. 120, 588 S.E.2d 97 (2003). There, we considered an identical challenge to the same statutory scheme, where Ed Robinson Laundry contended that the number of exemptions alone rendered section 12–36–2120 arbitrary and therefore unconstitutional. *Id.* at 125–26, 588 S.E.2d at 100. We noted that while the exemptions may be arbitrary in the political or economic sense of the word, that does not mean they are arbitrary in the constitutional sense. *Id.* at 126, 588 S.E.2d at 100. We accordingly held "Robinson's argument that '[t]he sheer number of exemptions demonstrates the exemptions are arbitrary' is without merit. We are concerned not with size or volume but with content." *Id.* Because Bodman's challenge, like Ed Robinson Laundry's, deals only with size and volume and not content, it must fail.

Furthermore, we reject Bodman's contention that we should not be bound by this decision[4] and hold that it is in accord with our constitutional principles. Bodman bears the burden of proving beyond a reasonable doubt that the classifications created are not supported by any rational basis, not just that the scheme as a whole is arbitrary. Indeed, we recently noted that "[w]ere we to examine the rationality of a law irrespective of any classification it creates, we would impermissibly step from our position as the arbiter of a statute's constitutionality and into the seats of the General Assembly." *Cabiness v. Town of James Island*, 393 S.C. 176, 191, 712 S.E.2d 416, 424 (2011). Permitting him to attack these statutes on equal protection grounds without any consideration of the classifications or their relationship to their putative legislative goal therefore would fundamentally alter the core of our analysis, which is a step we refuse to take. Bodman's view would even remove our presumption of constitutionality by employing a form of "guilt by association," where potentially valid caps and exemptions are struck down for violating the equal protection

---

4. He argues both that stare decisis should not bar our reconsideration of this issue and, regardless, that *Ed Robinson Laundry* is distinguishable from the case at hand because there were fewer exemptions in the statute when that case was decided. At the time, section 12–36–2120 contained sixty-one exemptions. *Ed Robinson Laundry*, 356 S.C. at 125 n. 2, 588 S.E.2d at 100 n. 2.

clause simply because they happen to be in a larger scheme that may include invalid parts (but we do not know for sure). We cannot sanction a rule which so readily vitiates the high burden of proof a challenger must meet in these cases.[5]

By expressly declining to offer proof as to the basis underlying any of the classifications created by sections 12–36–2110 and 12–36–2120, the manner in which Bodman has presented this case for our review precludes us from determining whether the exemptions and caps violate equal protection. Bodman therefore has not met his burden of proof.

## III.  SPECIAL LEGISLATION

Next, Bodman argues sections 12–36–2110 and 12–36–2120 violate our constitution's prohibition against special legislation. Due to our conclusion above, this issue need not detain us long.

■■■  Our constitution prohibits the enactment of special laws where a general law can be made applicable.  S.C. Const. art. III, § 34, cl. IX. "When a statute is challenged on the ground that it is special legislation, the first step is to identify the class of persons to whom the legislation applies." *Cabiness*, 393 S.C. at 189, 712 S.E.2d at 423.  Next, we must determine the basis for that classification, remembering that "the mere fact a statute creates a classification does not render it unconstitutional special legislation." *Id.* Thus, our special legislation analysis parallels the one we use for equal protection. *Id.*

As with his equal protection challenge, Bodman's contention that sections 12–36–2110 and 12–36–2120 constitute special legislation rests solely on the fact that there are so many caps and exemptions that they no longer bear a rational relationship to the purpose of the tax.  Once again, we stated in *Ed Robinson Laundry* that "[w]e are concerned not with size or volume but with content."  356 S.C. at 126, 588 S.E.2d at 100. Because Bodman expressly insists that we not examine the

---

5.  This disposes of Bodman's reliance on *People v. Abrahams*, 40 N.Y.2d 277, 386 N.Y.S.2d 661, 353 N.E.2d 574 (1976) and *Kroger Co. v. O'Hara Township*, 481 Pa. 101, 392 A.2d 266 (1978) for the proposition that a statute violates equal protection when it contains too many exceptions. Those cases are not consistent with the law of South Carolina.

content of the caps and exemptions, we hold he has failed to meet his burden in proving them unconstitutional.

## CONCLUSION

For the foregoing reasons, we hold Bodman has not met his burden of proof and enter judgment in favor of the Defendants. We emphasize that our holding rests solely on the fact that Bodman's challenge is to the number of caps and exemptions and not whether individual ones would withstand constitutional scrutiny. Thus, nothing in our opinion today should be construed as precluding a challenge based on the content of individual caps and exemptions at a later date.

BEATTY and KITTREDGE, JJ., concur.

TOAL, C.J., concurring in a separate opinion.

PLEICONES, J., concurring in a separate opinion.

Chief Justice TOAL.

I concur in the majority's well-reasoned decision, but write separately to emphasize our conclusion that today's result does not foreclose a future challenge based on the content of *individual* exemptions and caps. In my opinion, many of these exemptions and caps could not withstand even a minimal level of scrutiny under an equal protection analysis. The most egregious violation of equal protection is the sales tax cap found in section 12–36–2110(A) of the South Carolina Code. S.C.Code Ann. § 12–36–2110(A) (2000 & Supp.2012).[6] That

---

6. (A) The maximum tax imposed by this chapter is three hundred dollars for each sale made after June 30, 1984, or lease executed after August 31, 1985, of each:

> (1) aircraft, including unassembled aircraft which is to be assembled by the purchaser, but not items to be added to the unassembled aircraft;
> (2) motor vehicle;
> (3) motorcycle;
> (4) boat;
> (5) trailer or semitrailer, pulled by a truck tractor, as defined in Section 56–3–20, and horse trailers, but not including house trailers or campers as defined in Section 56–3–710 or a fire safety education trailer;

section provides a maximum $300 sales tax cap on all sales and leases of aircrafts, motor vehicles, motor cycles, boats, certain trailers, and recreational vehicles.

To determine whether a statute violates equal protection we utilize a three prong test examining (1) whether the law treats "similarly situated" entities differently, and if so, (2) whether the General Assembly has a rational basis for that disparate treatment, and (3) whether that disparate treatment bears a rational relationship to a legitimate governmental purpose. *See Ed Robinson Laundry and Dry Cleaning, Inc. v. S.C. Dep't of Revenue*, 356 S.C. 120, 123–24, 588 S.E.2d 97, 99 (2003). In my opinion, under the exemptions and caps scheme, retailers who specialize in selling exempted products are treated differently from retailers who sell non-exempted products, and this disparate treatment extends to manufacturers of exempted and non-exempted products. In my view, this disparate treatment does not bear a rational relationship to a legitimate governmental purpose.

In 2009, the General Assembly created the South Carolina Taxation Realignment Commission (TRAC). The General Assembly directed TRAC to undertake a thorough assessment of the State's current tax structure. In its December 2010 report, TRAC noted that South Carolina adopted its motor vehicles sales tax cap of $300 in 1984 to compete with a similar cap utilized in North Carolina. Final Report of the S.C. Taxation Realignment Comm'n, at 55 (Dec.2010) (hereinafter *TRAC Report* ).[7] The General Assembly sought to appease automobile dealers, particularly in border counties, who complained of lost sales to North Carolina car dealers. *Id.* While originally intended to place South Carolina on competitive footing with North Carolina, the sales tax cap no longer serves this purpose because North Carolina has moved away from a

---

(6) recreational vehicle, including tent campers, travel trailer, park model, park trailer, motor home, and fifth wheel; or

(7) self-propelled light construction equipment with compatible attachments limited to a maximum of one hundred sixty net engine horsepower.

S.C.Code Ann. § 12–36–2110(A) (2000 & Supp.2012).

7. South Carolina Taxation Realignment Commission, www.scstate house.gov/citizensinterestpage/TRAC/TRAC.html (last visited Apr. 11, 2013).

flat, across the board tax cap on motor vehicles. *Id.* at 55–58. Indeed, TRAC noted the obsolete nature of the cap, concluding, "South Carolina's $300 maximum sales tax cap on motor vehicle purchases is truly unique among the 50 states. The cap, entirely appropriate and necessary in 1984, 26 years later, represents one of the most regressive aspects of the State's entire sales and use tax code today." [8] *Id.* at 73.

From my perspective, while South Carolina's sales tax cap for motor vehicles had a rational basis connected to a legitimate governmental purpose in 1984, in 2012, it has outlived the intended purpose of making South Carolina competitive with neighboring states with regard to the motor vehicle market. Moreover, section 12–36–2110's regressive nature is clearly evident in its application to consumers who purchase old or debilitated motor vehicles and those consumers with the financial means to afford modern luxury motor vehicles and private aircraft. Thus, in my view, section 12–36–2110(A) of the South Carolina Code represents an arbitrary and capricious exception to the sales tax.

It is likely that the same can be said for many of the other exemptions or caps when viewed on an individual basis. However, the nature of Bodman's argument prevents this Court from exercising such a review.

Justice PLEICONES.

I concur in the judgment for the defendants, but write separately because I would decide the case on the ground that Bodman lacks standing. Bodman asserts that both taxpayer and "public importance" standing entitle him to maintain this declaratory judgment action challenging the constitutionality of certain tax statutes. While we permit generalized taxpayer standing when an individual seeks equitable relief, e.g., *Myers*

---

8. TRAC explained:

> As case in point, a resident purchasing a $6,000 car pays an effective sale tax rate of 5 percent—a tax rate that is 10 times HIGHER than a resident buying a car that costs $56,000, whose effective tax rate in South Carolina is just 0.54 percent—a tax rate 10 times less on a car that costs 10 times more. That is the definition of a regressive tax. TRAC therefore recommends repeal of South Carolina's outdated and regressive sales tax cap on cars.

TRAC Report, supra, at 73 (emphasis in original).

*v. Patterson*, 315 S.C. 248, 433 S.E.2d 841 (1993), Bodman does not seek an injunction but rather requests we strike down numerous statutory provisions. Accordingly, he lacks taxpayer standing. *ATC S., Inc. v. Charleston Cty.*, 380 S.C. 191, 669 S.E.2d 337 (2008).

Bodman also asserts standing under our state-created "public importance" exception. In my opinion, this narrow exception to standing cannot be invoked by a taxpayer, challenging taxing statutes, who cannot meet the taxpayer standing threshold. "Public importance" standing should be invoked only where the challenge cannot be otherwise raised, and should not be used to evade the application of other well-established standards. *Cf. Sloan v. Dep't of Transp.*, 379 S.C. 160, 666 S.E.2d 236 (2008) (Pleicones, J., dissenting); *Sloan v. Dep't of Transp.*, 365 S.C. 299, 618 S.E.2d 876 (2005).

I concur in the decision to award judgment to the defendants on the basis that Bodman lacks standing.