# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

South Carolina Human Affairs Commission, Appellant,

v.

Zeyi Chen & Zhirong Yang, Respondents.

Appellate Case No. 2018-001879

_____

Appeal from Charleston County
The Honorable Benjamin H. Culbertson, Circuit Court Judge
The Honorable J.C. Nicholson Jr., Circuit Court Judge

_____

Opinion No. 27988
Submitted October 15, 2019 – Filed July 22, 2020

_____

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

_____

Randy Alexander Pate II and Lee Ann Rice, of South Carolina Human Affairs Commission, of Columbia; and Karl S. Bowers, of Bowers Law Office, LLC, of Columbia; for Appellant.

Zeyi Chen and Zhirong Yang, of Charleston, *pro se* Respondents.

_____

**CHIEF JUSTICE BEATTY:** The South Carolina Human Affairs Commission (the Commission) brought this action against Zeyi Chen and Zhirong

Yang (Respondents), alleging they violated the South Carolina Fair Housing Law (Fair Housing Law)[1] by discriminating against a prospective tenant. The Commission appeals circuit court orders (1) denying the Commission's motion pursuant to Rule 43(k), SCRCP to enforce the parties' settlement agreement; (2) finding certain information was obtained by the Commission during the conciliation process and was, therefore, subject to orders of protection and inadmissible under S.C. Code Ann. § 31-21-120(A) (2007) of the Fair Housing Law; and (3) ultimately dismissing the Commission's action based on a finding section 31-21-120(A) is unconstitutional and the entire statute is void. We affirm in part, reverse in part, and remand.

## I. FACTS

The Commission brought this action against Respondents in 2014 alleging discrimination based on familial status in violation of the state's Fair Housing Law.[2] The action was based on a complaint received from Stacy Woods, who reported that she responded to an ad on Craigslist for a rental residence in Mount Pleasant and was told it was not available. Woods maintained she was refused the rental property because she had a four-year-old daughter.

The property is a commercial building owned by Respondents that contains a skin care and acupuncture clinic. There are additional rooms over the business that Respondents offered for rent, although the rooms did not have full kitchens and bathrooms inside the premises. In several responses to the complaint (deemed "position statements" by the Commission), Respondents denied the allegation of discrimination. They stated the premises had already been rented when Woods came to view it, and Woods was informed of this fact. Respondents also advised the Commission that the rental property was not suitable for a young child due to the lack of ready access to facilities and the fact that it was above the clinic, where clients came for treatment in a quiet atmosphere.

---

[1] S.C. Code Ann. §§ 31-21-10 to -150 (2007 & Supp. 2019).

[2] *See* S.C. Code Ann. § 31-21-30(6)(a) (2007) (defining "familial status" to mean one or more individuals who are under the age of eighteen and domiciled with a parent, another person having legal custody, or a designee); *id.* § 31-21-40(2) (providing it is unlawful to discriminate against any person in the sale or rental of a dwelling because of race, color, religion, sex, familial status, or national origin).

The parties agreed to engage in mediation pursuant to the South Carolina Alternative Dispute Resolution Rules (SCADR). On March 24, 2016, the parties entered into a settlement agreement.[3] Respondents did not admit liability but agreed to comply with the Fair Housing Law in the future, participate in one free training session on fair housing principles, display a Fair Housing Law poster on their rental property, and pay $9,500 to the Commission. The settlement agreement, which was prepared by the mediator, further provided, "These terms will be reduced to a formal Consent Order to be executed by all of the parties, which shall be a public document." A separate signature page was attached containing lines for four signatures: the Commission, Woods (the aggrieved person), Respondent Chen, and Respondent Yang, all of whom signed (one of the Commission's attorneys signed on behalf of the Commission). There was no signature line for Respondents' counsel, who did not sign the agreement.

The mediator promptly filed a Proof of ADR or Exemption form with the circuit court, indicating the matter had been settled in full and that the parties would soon be filing a consent order. The Commission prepared a consent order and emailed it to Respondents' counsel for counsel's signature. In a series of emails, the Commission followed up several times, and one of Respondents' attorneys stated he was reviewing the proposed order and would be back in touch. However, Respondents' counsel thereafter informed the Commission in a telephone call that "he was having difficulty getting his clients [Respondents] to comply with the settlement agreement."

When Respondents' counsel failed to execute the consent order, the Commission filed a motion to compel enforcement of the settlement agreement pursuant to Rule 43(k), SCRCP. The circuit court (Judge Benjamin H. Culbertson presiding) denied the motion in an order filed November 15, 2016.

In 2017, the Commission moved for partial summary judgment on two of the claims pending in the circuit court, (1) that Respondents discriminated in the terms, conditions, or privileges of the rental of a dwelling on the basis of familial status; and (2) that Respondents made, printed, published, or caused to be made, printed, or

---

[3] In addition to the mediator, those present included attorneys Lee Ann Rice and Alex Pate for the Commission; Woods; Respondents; and Respondents' then-counsel, Ian R. O'Shea and Jim Leffew.

published, any notice, statement, or advertisement with respect to the rental of a dwelling with an intention to make a preference, limitation, or discrimination based on familial status. *See* S.C. Code Ann. § 31-21-40(2), (3) (2007).

A hearing on the Commission's motion for partial summary judgment was held in the circuit court in October 2017 (Judge J.C. Nicholson Jr. presiding). Respondents made a motion for a protective order on the basis the Commission's memorandum supporting summary judgment contained confidential and inadmissible information from conciliation efforts that could not be made public or used as evidence based on section 31-21-120(A) of the Fair Housing Law, which provides "[n]othing said or done" during informal endeavors such as conciliation may be disclosed without the consent of the parties. *See* S.C. Code Ann. § 31-21-120(A) (2007) ("If the commission decides to resolve the complaint, it shall proceed to try to eliminate or correct the alleged discriminatory housing practice by informal methods of conference, conciliation, and persuasion. . . . *Nothing said or done in the course of the informal endeavors may be made public or used as evidence* in a subsequent proceeding under this chapter without the written consent of the persons concerned. An employee of the commission who makes public any information in violation of this provision is guilty of a misdemeanor punishable by a fine of not more than two hundred dollars or imprisoned for not more than thirty days." (emphasis added)). The Commission sought clarification of what information was to be protected on the basis it was "said or done" in the course of conciliation, and the parties were given the opportunity to submit logs of what they believed fell within the confines of the statutory conciliation process.

The circuit court subsequently denied the Commission's motion for partial summary judgment in a form order filed November 8, 2017. After reviewing the document logs submitted by the parties, the circuit court filed a Sealed Protective Order on February 8, 2018, protecting certain materials deemed to be conciliation materials from public disclosure and/or use at trial.

Both the Commission and Respondents filed motions for reconsideration. Upon further review of the materials, the circuit court *sua sponte* requested additional memoranda from the parties as to whether the statute itself, section 31-21-120(A), and/or the manner in which the Commission administered it violated Respondents' rights to due process. The circuit court held a hearing on the motions for reconsideration in April 2018. At that time, the parties presented arguments

regarding which of the materials they believed were related to conciliation and the court's question regarding due process.

On May 15, 2018, the circuit court issued an order substantially expanding the scope of its original protective order. The circuit court found the Commission violated section 31-21-120(A) by having inconsistent interpretations of what constituted conciliation and by commingling its investigative and conciliation efforts. The circuit court stated although dismissal of the claims was not appropriate, "an unfavorable evidentiary ruling [was] necessary to deter future actions of this nature" and ruled the Commission was "barred from using or making public any material contained in its conciliatory file, its investigative file, the attached logs submitted by [Respondents], and any material covered by [the] previous Protective Order that is not covered by this Order." The circuit court stated the information was not admissible in any future hearings. However, it summarily found that "neither the statute nor the manner in which it was administered violated [Respondents'] rights to due process of law."

Respondents filed a second motion for reconsideration that pertained solely to the constitutional issues raised *sua sponte* by the circuit court. Respondents asked the circuit court to amend its order to address the unconstitutional vagueness of the statute, asserting the court did not fully address why it ruled neither the statute nor the Commission violated their due process rights. Respondents contended the circuit court's finding there was no violation of due process was inconsistent with its other determinations, and they asked the court to either declare the statute unconstitutionally vague or provide clarification as to its reasoning regarding due process.

The circuit court granted Respondents' motion for reconsideration. The circuit court acknowledged that it raised the constitutional concern *sua sponte* and ruled upon it for the first time in the order of May 15, 2018. It additionally acknowledged that, "[w]hile the matter [was] not positioned as a motion dispositive of the entire case, . . . the effect of rendering the statute [the Commission's] claims rely on void-for-vagueness would be dispositive of the case." Upon examining section 31-21-120(A), the circuit court found it was unconstitutionally vague and that the remainder of the statute could not operate without subsection (A), so all of section 31-21-120 was rendered void. As a result, the circuit court dismissed the Commission's action in its entirety.

## II. DISCUSSION

The Commission argues the circuit court erred in issuing orders (1) denying its motion to enforce the settlement agreement under Rule 43(k), SCRCP; (2) finding extensive portions of the Commission's file was inadmissible because it was obtained from the statutorily prescribed conciliation process, and substantially expanding that exclusion in a second order; and (3) dismissing the Commission's action in its entirety after finding section 31-21-120(A) of the Fair Housing Law was unconstitutionally vague and the statute as a whole was void.

### A.    Order Denying Enforcement of Settlement Agreement

The circuit court denied the Commission's motion for enforcement of the settlement agreement after concluding the agreement did not satisfy the requirements for enforcement set forth in Rule 43(k), SCRCP.  Specifically, the circuit court found Rule 43(k) requires the signatures of the parties *and* their counsel, but Respondents' counsel did not sign the agreement.  The circuit court rejected the Commission's argument that strict compliance with Rule 43(k) was not required because the parties admitted the agreement was signed by them in the presence of counsel.  The circuit court found Rule 43(k) provides several avenues for enforcement of a settlement agreement, and parties may withdraw their assent any time before one of the alternatives for obtaining enforcement is met.  We agree with the circuit court's ruling.

Rule 43(k) provides in relevant part as follows:

> No agreement between counsel affecting the proceedings in an action *shall be binding unless* [1] reduced to the form of a consent order or written stipulation signed by counsel and entered in the record, or [2] unless made in open court and noted upon the record, or [3] *reduced to writing and signed by the parties and their counsel*.

Rule 43(k), SCRCP (emphasis added).

Rule 43(k) is applicable to settlement agreements.  *Ashfort Corp. v. Palmetto Constr. Grp., Inc.*, 318 S.C. 492, 494, 458 S.E.2d 533, 535 (1995).  "Like former Circuit Court Rule 14 on which it is based, Rule 43(k) is intended to prevent disputes

as to the existence and terms of agreements regarding pending litigation." *Id.* at 493–94, 458 S.E.2d at 534.

In a footnote in *Ashfort*, the Court stated, "The rule does not apply where the agreement is admitted or has been carried into effect." *Id.* at 494 n.1, 458 S.E.2d at 534 n.1. We subsequently held in *Farnsworth*, however, that the footnoted statement in *Ashfort* is "dictum" that "does not comport with the language of Rule 43(k)." *Farnsworth v. Davis Heating & Air Conditioning, Inc.*, 367 S.C. 634, 638, 627 S.E.2d 724, 726 (2006). We explained that, "[i]n interpreting the meaning of the South Carolina Rules of Civil Procedure, the Court applies the same rules of construction used to interpret statutes." *Id.* (quoting *Maxwell v. Genez*, 356 S.C. 617, 620, 591 S.E.2d 26, 27 (2003)). "The rule is plainly worded: 'No agreement . . . shall be binding unless' one of the [stated] requirements is met." *Id.* (omission in original). Thus, Rule 43(k) is applicable even if the agreement has been admitted. We observed that "an agreement is non-binding until a condition is satisfied," and "[u]ntil a party is bound, she is entitled to withdraw her assent."[4] *Id.* at 637, 627 S.E.2d at 725.

In *Buckley v. Shealy*, 370 S.C. 317, 635 S.E.2d 76 (2006), we adhered to this interpretation. There, the parties (husband and wife) engaged in court-ordered mediation and signed an agreement. It was undisputed that the husband gave the wife a check for $5,000 and paid her a monthly sum of $1,500 from 1997 to 2003. However, the signed agreement was never formally entered in the family court record. Later, the agreement was not available for review, and the parties disputed the exact terms of their agreement. This Court affirmed the family court's denial of the husband's request to enforce the agreement under Rule 43(k), stating, "Because the purported agreement the parties reached following mediation was neither entered into the court's record nor acknowledged in open court and placed upon the record, Rule 43(k), SCRCP, plainly provides that the agreement is unenforceable." *Id.* at 322, 635 S.E.2d at 78 (Rule 43(k) then provided these alternatives for enforcement).[5]

---

[4] In *Farnsworth*, the plaintiff authorized her attorney to offer a written settlement agreement to the defendant, and the defendant's attorney accepted the offer in writing, but the plaintiff changed her mind and decided she wanted a trial before the agreement was entered in the record. 367 S.C. at 636, 627 S.E.2d at 725.

We rejected the husband's argument that Rule 43(k) should not apply where an agreement has been admitted or carried into effect, noting "we recently held that Rule 43(k)'s terms are *mandatory* and that *Ashfort*'s recitation was misguided dicta." *Id.* at 322 n.2, 635 S.E.2d at 78 n.2 (emphasis added) (citing *Farnsworth*). Consequently, "we adhere[d] to the view we adopted in *Farnsworth*." *Id.*

The Commission asserts the circuit court erred in failing to enforce the settlement agreement here because (1) the agreement would be enforceable under general contract principles, as it was signed by the parties, so it should be deemed binding; (2) equitable principles support enforcement, as it is clear the parties agreed to the settlement at the conclusion of mediation and Respondents later changed their minds before the consent order was entered on the record; and (3) public policy supports enforcement because to require strict compliance with the conditions in Rule 43(k) to secure enforcement could lead to mischief, as attorneys could intentionally fail to sign agreements to retain the strategic option of rescinding the agreement at a later date.

As a matter of public policy and to avoid disputes over settlements, Rule 43(k) sets forth several methods for making a settlement agreement binding and enforceable. In this case, the agreement was not yet embodied in a consent order or written stipulation signed by counsel and entered in the record, and it was not made in open court and noted upon the record. Thus, only the last option remained under Rule 43(k)—determining whether the agreement was "reduced to writing and signed by the parties and their counsel."

Where Rule 43(k) applies, this Court has held its terms are mandatory, which precludes a party from turning to contract or equitable principles (or counter public policy arguments) to vitiate those terms. Substantial compliance is not sufficient. The purpose of Rule 43(k) and its predecessors is the avoidance of uncertainty. In this case, the next step in the proceeding would have been the entry of a consent order, but Respondents withdrew their assent. The requirements of Rule 43(k) clearly were not met in the current matter for the reasons found by the circuit court. Consequently, we affirm the circuit court's order denying the Commission's motion to compel enforcement of the settlement agreement.

---

[5] Rule 43(k) was amended in 2009 to add that a settlement agreement may be enforced if the agreement is reduced to writing and signed by the parties and their counsel. *See* Note to 2009 Amendment, Rule 43(k), SCRCP.

**B.      Orders of Protection Related to Conciliation Efforts**

The Commission asserts the circuit court erred in its interpretation of section 31-21-120(A) by including purely factual information, including some discovery materials, within the scope of its protective orders after finding they were part of the conciliation process.  The Commission contends the circuit court declined to give adequate consideration to comparable federal law to aid its decision and gave no deference to the Commission's interpretation.  We agree.

This Court has previously held that where state law is based on a substantially similar federal counterpart, cases interpreting those federal provisions or procedures "are certainly persuasive if not controlling" in construing the state provisions.  *See Orr v. Clyburn*, 277 S.C. 536, 540, 290 S.E.2d 804, 806 (1982) ("Under general rules of statutory construction, a jurisdiction adopting legislation from another jurisdiction imports with it the judicial gloss interpreting that legislation.  Thus, Title VII cases [that] interpret provisions or procedures essentially identical to those of the [South Carolina] Human Affairs Law are certainly persuasive if not controlling in construing the Human Affairs Law." (citations omitted)).

Our state's Fair Housing Law is based on a federal counterpart, Title VIII of the Civil Rights Act of 1968 (as amended), the federal Fair Housing Act:

> The  federal Fair Housing Act  and  South  Carolina  Fair Housing Law prohibit discrimination in the rental of a dwelling based upon a person's race, color, religion, sex, familial status, or national origin.  *See* S.C. Code Ann. § 31-21-40 (2007); 42 U.S.C. § 3604 (2012).

*SPUR at Williams Brice Owners Ass'n v. Lalla*, 415 S.C. 72, 89, 781 S.E.2d 115, 124 (Ct. App. 2015) (citing the United States Fair Housing Act, 42 U.S.C. §§ 3601-3631 (2012); South Carolina Fair Housing Law, S.C. Code Ann. §§ 31-21-10 to -150 (2007 & Supp. 2014)).

Under the federal Fair Housing Act, the Office of Fair Housing and Equal Opportunity (FHEO) of the United States Department of Housing and Urban Development (HUD) is tasked with overseeing the elimination of housing discrimination.  *See* 42 U.S.C. § 3608(a) (2012) ("The authority and responsibility for administering this Act shall be in the Secretary of [HUD]."); U.S. Dep't of Housing & Urban Dev., https://www.hud.gov (last visited Jan. 8, 2020)

(describing FHEO's mission to eliminate housing discrimination through the enforcement and administration of federal fair housing provisions).

As part of this oversight, the federal Fair Housing Act requires HUD to engage in conciliation for all housing discrimination complaints to the extent feasible. *See* 42 U.S.C. § 3610(b)(1) (2012) ("During the period beginning with the filing of such complaint and ending with the filing of a charge or a dismissal by the Secretary [of HUD], the Secretary shall, to the extent feasible, engage in conciliation with respect to such complaint."); *see also United States v. Hillman Housing Corp.*, 212 F. Supp. 2d 252, 253 (D.N.Y. 2002) (citing HUD's statutory directive to engage in conciliation when feasible). Conciliation is defined as "the attempted resolution of issues raised by a complaint, or by the investigation of such complaint, through *informal negotiations* involving the aggrieved person, the respondent, and the Secretary [of HUD]." 42 U.S.C. § 3602(*l*) (2012) (emphasis added).

The federal Fair Housing Act contains a prohibition on the use of conciliation materials that is nearly identical to the protection afforded "informal endeavors," including conciliation, in section 31-21-120(A) of our state's Fair Housing Law. *Compare* 42 U.S.C. § 3610(d)(1) (2012) ("Nothing said or done in the course of conciliation under this subchapter may be made public or used as evidence in a subsequent proceeding under this subchapter without the written consent of the persons concerned."), *with* S.C. Code Ann. § 31-21-120(A) (2007) ("Nothing said or done in the course of the informal endeavors may be made public or used as evidence in a subsequent proceeding under this chapter without the written consent of the persons concerned."). Notably, Title VII of the Civil Rights Act of 1964 (as amended) also contains a similar prohibition on the disclosure of conciliation materials in cases of employment discrimination investigated by the Equal Employment Opportunity Commission (EEOC).[6]

Noting the scarcity of South Carolina law on this subject, the Commission cited this Court's pronouncement in *Orr* that federal decisions should be treated as persuasive if not controlling and provided federal authority discussing conciliation and the treatment of factual statements in a variety of contexts for the circuit court's

---

[6] *See* 42 U.S.C. § 2000e-5(b) (2012) ("Nothing said or done during and as a part of such informal endeavors [of conference, conciliation, and persuasion] may be made public by the Commission [EEOC], its officers or employees, or used as evidence in a subsequent proceeding without the written consent of the persons concerned.").

consideration.  *See, e.g.*, *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 193 (2d Cir. 1991) ("Factual statements regarding past events are distinguishable from offers of compromise . . . ."); *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1477 (5th Cir. 1992) (holding a letter containing only supporting facts and a denial of the merits of the claim did not constitute conciliation evidence where the letter did not contain an offer of settlement nor a response to an offer of settlement; the court distinguished purely factual material related to the merits of the charge from proposals and counter-proposals made by the parties during an agency's attempt at conciliation). Included among the federal resources was Chapter 11 of HUD's *Title VIII Complaint Intake, Investigation, and Conciliation Handbook* (2005, Version 8024.1 Rev-2), https://hud.gov/sites/documents/80241C11FHEH.PDF (hereinafter HUD Handbook), which contains detailed guidelines on all aspects of the conciliation process undertaken by HUD pursuant to the federal Fair Housing Act.

The circuit court acknowledged the Commission's assertion that the federal authority and state regulations appeared to support the agency's interpretation of conciliation as involving offers of compromise and counteroffers (responses to offers of compromise), but it indicated South Carolina law, not federal law, was most relevant, and it stated it did not believe factual matters were admissible without qualification, noting the HUD Handbook specified that statements made during conciliation were admissible only if they were also discovered outside conciliation. The circuit court disagreed with the Commission's contention that the reference to informal endeavors in section 31-21-120(A) was similar to Rule 408 of the South Carolina Rules of Evidence (SCRE) (regarding offers of compromise), expressing concern that the statute would have no efficacy if the issue was addressed by reference to the evidentiary rule.  The circuit court also expressed concern that the Commission's position as to what constituted conciliation material had not been consistent and it had improperly commingled the conciliation and investigative stages in this case.

Federal authorities have drawn an analogy between conciliation and the federal evidentiary rule governing offers of compromise.[7]  South Carolina's Rule

---

[7] *See, e.g.*, *Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 880 & 881 n.6 (5th Cir. 1981) (stating "[t]he obvious purpose of the statute's [42 U.S.C. § 2000e-5(b) of Title VII] prohibition on revealing *statements made or actions taken* during the Commission's [EEOC's] conciliation efforts is to promote the congressional policy favoring unlitigated resolution of employment discrimination claims" and noting

408, SCRE, is identical to the federal evidentiary rule, and it provides that evidence of offers of compromise or the acceptance of offers is generally inadmissible; further, "[e]vidence of conduct or statements made in compromise negotiations is likewise not admissible," but "[t]his rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations." *See* Notes to Rule 408, SCRE ("This rule is identical to the federal rule.").

In our view, the reference in Rule 408, SCRE, to "conduct or statements made in compromise negotiations" is consistent with the federal statutory definition of conciliation as being informal negotiations among the agency, the aggrieved person, and the respondent to resolve a complaint (42 U.S.C. § 3602(*l*)), the federal statutory prohibition on the disclosure or use of anything "said or done in the course of conciliation" (42 U.S.C. § 3610(d)(1)), this state's statutory prohibition as to anything "said or done in the course of the informal endeavors" (section 31-21-120(A)), as well as the guidelines contained in the HUD Handbook.[8]  We note the reference (see *supra* note 7) by the United States Court of Appeals for the Fifth Circuit to a prohibition on "statements made or actions taken" (whether oral or

---

"[t]he purpose of the statute is similar to that embodied in the traditional evidentiary rule making offers of compromise and settlement inadmissible," citing Rule 408 of the Federal Rules of Evidence (emphasis added)); *Brooks v. Grandma's House Day Care Ctrs., Inc.*, 227 F. Supp. 2d 1041, 1042–44 (D. Wis. 2002) (ruling an attorney's letter in a Title VII action did not contain statements relating to compromise, settlement, or negotiation and was, therefore, not part of the informal endeavors; the court noted "Congress's intent in prohibiting statements during conciliation efforts was to encourage free and open communication in order to achieve negotiated settlements," and the prohibition "is similar to that embodied in the traditional evidentiary rule making offers of compromise and settlement inadmissible").

[8] *Cf. Mach Mining, LLC v. EEOC*, 575 U.S. 480, 494 (2015) (discussing the limited standard of review applicable to evaluating the EEOC's duty to engage in conciliation and stating due to "the statute's [Title VII's] non-disclosure provision, [] a court looks only to whether the EEOC attempted to confer about a charge, and not to what happened (*i.e.,* statements made or positions taken) during those discussions").

written) during informal negotiations closely approximates the parameters of South Carolina's statute regarding anything "said or done" during the informal endeavors.

The HUD Handbook specifically refers to offers of compromise and counteroffers as part of the conciliation process. *See* HUD Handbook, at 11-6 ("If the parties or their representatives submit documents, which include a mix of conciliation matters and investigative evidence, HUD must make every effort to protect the confidentiality of the conciliation material. For example, if a portion of a complainant's supplemental statement, or a letter from the respondent's attorney *includes proposals or counteroffers of settlement*, the conciliator should mask-over the *conciliation-related passages* and photocopy the documents." (emphasis added)). The HUD Handbook explains that the prohibition on the use, without consent, of information obtained during conciliation does not apply if the same information is discovered outside the conciliation process. *See* HUD Handbook, at 11-3 ("For example, if a respondent makes an admission during conciliation negotiations, the investigator cannot use this admission in his/her recommendation. However, if the respondent makes this same admission in a later deposition, the investigator can use this admission in his/her recommendation.").

The state regulations cited by the Commission are comparable to federal authority discussing the conciliation process, which provide conciliation may occur at any stage in the processing of the complaint.[9] While we agree with the Commission that conciliation may occur at any stage, we note HUD procedures provide items related to conciliation must be properly identified and separated from other materials in order to safeguard the confidentiality of the protected items.

---

[9] *See generally* S.C. Code Ann. Regs. 65-225(A)(1), (3) (2012) (stating during the period beginning with the initial filing of a complaint and ending with the filing of a complaint for hearing or dismissal, the Commission will, to the extent feasible, attempt to conciliate the complaint; and, where the rights of those concerned can be protected from improper disclosure, the investigator may suspend fact finding and engage in conciliation efforts); *id.* Regs. 65-225(E)(1) (the Commission may terminate conciliation efforts if it finds a voluntary agreement is not likely to result). These provisions echo the federal procedure. *See* 42 U.S.C. § 3610(b)(1); *see also* https://www.hud.gov/program_offices/fair_housing_equal_opp/complaint-process#_Informal_Resolution_and (noting HUD encourages the informal resolution of matters, so conciliation efforts may occur at any stage in the processing of the complaint).

The Commission maintains Respondents essentially rejected all attempts at conciliation after they withdrew their initial assent to the settlement agreement. Thus, most of the challenged items were not part of the informal negotiations to settle the claims and they were otherwise discoverable, so they should not have been the subject of the orders of protection and sealed.

We agree with the federal authority that conciliation consists of informal negotiations among the agency, the aggrieved party, and the respondent to resolve a complaint of discrimination. To summarize, offers of compromise and responses to offers are the focus of conciliation, although we caution that informal negotiations to resolve the complaint do not always result in a firm or successful offer, so it is the negotiation process, i.e., the conciliation, that is protected, not just a specific offer. Section 31-21-120(A) protects statements made (whether oral or written) and things done, i.e., conduct, during those informal negotiations in which the parties attempt to resolve the complaint. However, evidence arising through conciliation is not inadmissible if it is also discovered outside the conciliation process. The purpose of the statute is to encourage the resolution of complaints of discrimination without the need for formal litigation, but one may not use the conciliation process to insulate facts or documents that are otherwise subject to discovery through normal means.

We hold the circuit court committed an error of law by failing to give due consideration to comparable federal authority, as we indicated was appropriate in *Orr*, to define and identify conciliation materials, and by failing to give proper deference to the agency's interpretation before issuing multiple protection orders. *See generally City of Rock Hill v. Harris*, 391 S.C. 149, 152, 705 S.E.2d 53, 54 (2011) ("An issue regarding statutory interpretation is a question of law."); *Kiawah Dev. Partners, II v. S.C. Dep't of Health & Envtl. Control*, 411 S.C. 16, 34, 766 S.E.2d 707, 718 (2014) (observing an agency's interpretation of statutes entrusted to its administration and its own regulations is entitled to deference unless there are compelling reasons to differ). Moreover, the circuit court acknowledged that much of the material protected by the order of protection was not conciliation material.

While we understand the circuit court's frustration that the Commission's treatment of this case did not provide a model of clarity, the court did not apply an appropriate standard under section 31-21-120(A) and imposed an unwarranted restriction on the Commission's ability to present its case. Consequently, we reverse the orders of protection. The circuit court sealed many of the items challenged by Respondents, so our decision addresses a question of law as to the interpretation of

the statute and is not intended as a comment regarding the ultimate admissibility of any particular items.[10]  Rather, the question of admissibility should be evaluated on remand, applying the appropriate standard.

## C.     Order of Dismissal Based on Constitutionality of Section 31-21-120(A)

The Commission asserts the circuit court erred in dismissing the Commission's claims against Respondents on the basis section 31-21-120(A) of the Fair Housing Law is unconstitutionally vague and the entire statute is void as a whole.  We agree.

"This Court has a very limited scope of review in cases involving a constitutional challenge to a statute." *Joytime Distribs. & Amusement Co. v. State*, 338 S.C. 634, 640, 528 S.E.2d 647, 650 (1999).   "All statutes are presumed constitutional and will, if possible, be construed so as to render them valid."   *Id.* "A legislative act will not be declared unconstitutional unless its repugnance to the constitution is clear and beyond a reasonable doubt." *Id.* (citing *Westvaco Corp. v. S.C. Dep't. of Rev.,* 321 S.C. 59, 467 S.E.2d 739 (1995)). "A legislative enactment will be declared unconstitutional only when its invalidity appears so clearly as to leave no room for reasonable doubt that it violates a provision of the constitution."  *Id.*  "A possible constitutional construction must prevail over an unconstitutional interpretation."  *State v. Neuman*, 384 S.C. 395, 402, 683 S.E.2d 268, 271 (2009) (citation omitted).

The void-for-vagueness doctrine is primarily a criminal doctrine.  *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1173 (D.N.M. 2014).  "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).  "Applying this standard, the [Supreme Court of the United States] has invalidated two kinds of criminal laws as 'void for vagueness':  laws that *define* criminal offenses and laws that *fix the permissible sentences* for criminal offenses.  *Beckles v. United States*, 137 S. Ct. 886, 892 (2017).

---

[10] Because we are reversing the circuit court's order dismissing the action in the next section of this opinion, we have addressed the appeal of the orders of protection.

The Supreme Court has held the void-for-vagueness doctrine is also applicable to civil matters where the rule or standard is so vague and indefinite as to really be no rule or standard at all. *Boutilier v. Immigration & Naturalization Serv.*, 387 U.S. 118, 123 (1967); *see also Seniors Civil Liberties Ass'n v. Kemp,* 965 F.2d 1030, 1036 (11th Cir. 1992) ("To find a civil statute void for vagueness, the statute must be 'so vague and indefinite as really to be no rule or standard at all.'" (quoting *Boutilier,* 387 U.S. at 123)). *But cf. In re Treatment of Mays v. State*, 68 P.3d 1114, 1117 (Wash. Ct. App. 2003) (stating "there is no distinction between the vagueness tests applicable to civil and criminal proceedings").

"A law is unconstitutionally vague if it forbids or requires the doing of an act in terms so vague that a person of common intelligence must necessarily guess as to its meaning and differ as to its application." *S.C. Dep't of Soc. Servs. v. Michelle G.*, 407 S.C. 499, 506, 757 S.E.2d 388, 392 (2014) (citation omitted). "[A]ll the Constitution requires is that the language convey sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices." *Id.* (alteration in original) (citation omitted). "The requirement that statutory language must be reasonably certain is satisfied 'by the use of ordinary terms which find adequate interpretation in common usage and understanding,' or if the term can be given meaning by reference to other definable sources." *Id.* (quoting *In re Maricopa Cty. Juvenile Action Nos. JS-5209 & JS-4963*, 692 P.2d 1027, 1034 (Ariz. Ct. App. 1984) (internal citation omitted by court)).

The Supreme Court has observed that "[t]he precise point of differentiation in some instances is not easy of statement, but" as a general rule, decisions upholding statutes as having sufficient certainty have "rested upon the conclusion that they employed words or phrases having a technical or other special meaning, well enough known to enable those within their reach to correctly apply them, or a well-settled common-law meaning, notwithstanding an element of degree in the definition as to which estimates might differ, or, . . . 'that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded.'" *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391–92 (1926) (citations omitted)).

At the hearing in this matter, the circuit court stated that what it meant by its request to address due process and the vagueness of the statute was "the failure to distinguish or set up any guidelines on how you handle conciliation and how you handle investigations separating the two." The circuit court opined there was no way

for the public to know what conciliation means, so its "concern [was] how you administer this statute."

In its written order ruling section 31-21-120(A) was unconstitutional, the circuit court found, in relevant part, that the statute fails to adequately define terms and provide standards as to the statute's application, and "[a] person of common intelligence cannot understand the statute's meaning and application if the Court, attorneys, and [the] agency vested with the statute's enforcement differ in opinion so vastly as to the statute's meaning and application." The court stated it would not defer to the agency's interpretation, finding it was arbitrary, capricious, or manifestly contrary to the statute.

We hold Respondents have not met their heavy burden of proving the statute is unconstitutionally vague. *See Bodman v. State*, 403 S.C. 60, 66, 742 S.E.2d 363, 366 (2013) ("The party challenging the statute bears the heavy burden of proving that 'its repugnance to the constitution is clear and beyond a reasonable doubt.'" (citation omitted)); *City of Beaufort v. Baker*, 315 S.C. 146, 154, 432 S.E.2d 470, 475 (1993) (stating "the burden rests upon the party challenging constitutionality").

The fact that the attorneys and the circuit court had difficulty agreeing on the meaning of conciliation is not a proper test for determining whether the statute is unconstitutionally vague. As we found in the preceding section of this opinion, the circuit court committed an error of law in failing to give due consideration to the comparable federal cases and guidelines addressing conciliation, as well as the agency's interpretation. The subjective opinions of the parties and the court in this case and the difficulties they encountered in defining conciliation and its parameters are not a sufficient basis for advancement of a constitutional challenge. *See Town of Mount Pleasant v. Chimento*, 401 S.C. 522, 535 n.6, 737 S.E.2d 830, 838 n.6 (2012) ("A statute's constitutionality is judged on an objective, not subjective, basis."); *Briggs v. Greenville Cty.*, 137 S.C. 288, 295, 135 S.E. 153, 155 (1926) ("A statute cannot be held void for uncertainty if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it." (citation omitted)). Moreover, the constitutional challenge to the conciliation statute fails under any circumstances in light of federal authority and HUD guidelines on

conciliation that assist in constructing its meaning and application.[11]  *Cf. Seniors Civil Liberties Ass'n*, 965 F.2d at 1036 ("Even if the most stringent scrutiny is applied, the statute has the constitutionally required degree of specificity.").

Our finding on this point is dispositive of the constitutional issue, so we need not address the Commission's remaining contentions.[12]  Accordingly, we reverse the circuit court's order dismissing the Commission's action based on its findings section 31-21-120(A) is unconstitutional and the statute as a whole is void, and we remand the matter to the circuit court.

## III.  CONCLUSION

We affirm the circuit court's denial of the Commission's motion to compel enforcement of the parties' settlement agreement.  We reverse the circuit court's orders of protection, as well as its order dismissing the Commission's claims, and we remand the matter to the circuit court for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**HEARN and JAMES, JJ., concur. KITTREDGE, J., concurring in part and dissenting in part in a separate opinion in which FEW, J., concurs.**

---

[11] The circuit court did not specify whether it considered the statute to be criminal or civil, but it appeared to apply the criminal, rather than the higher civil, standard of analysis. Section 31-21-120(A) imposes a criminal penalty on Commission employees for violation of the statute, but it does not specify a penalty for other persons.  No issue has been raised in this regard, so we need not consider it further as the constitutional challenge clearly fails under either standard.

[12] The Commission asserts, *inter alia*, that the void-for-vagueness doctrine is not applicable because Respondents were not entitled to due process during the agency's investigative process.  Because the high threshold for rendering a statute unconstitutional under the void-for-vagueness doctrine clearly has not been met, we need not address the Commission's remaining contentions.  *See generally Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (observing an appellate court need not address remaining issues when the determination of another point is dispositive).

**JUSTICE KITTREDGE:**  I concur in part and dissent in part.  I view the trial court proceedings differently concerning the admissibility dispute over conciliation efforts.  In addition, I would vacate the trial court's finding that section 31-21-120(A) of the South Carolina Code (2007) is unconstitutional, but unlike the majority, I would not reach the merits of the constitutional challenge.

I concur with Section II.A concerning the analysis and resolution regarding Rule 43(k), SCRCP.  I also concur in result with Section II.B regarding admissibility of evidence related to conciliation efforts.  I believe, however, the trial court's analysis was faithful to applicable law concerning the admissibility of conciliation efforts, including the HUD Handbook, which is prominently featured in the majority opinion.

The proceedings below were marked by inconsistency and confusion.  The blame falls largely on the South Carolina Human Affairs Commission (the Commission).  For example, during one deposition, Commission counsel objected to any discussion pertaining to a document, stating, "I'm going to object to this *in its entirety* in as much as it contains information related to conciliation. . . .  [A]nything related to conciliation is only germane to conciliation."  (Emphasis added.)  Respondents' counsel readily agreed with Commission counsel.  Commission counsel then changed course before the trial court and attempted to more finely parse which portions of documents were not part of conciliation.  The Commission's changing positions concerning what documents and statements properly fell within the ambit of conciliation efforts caused confusion and frustration for everyone.  The trial court nevertheless understood that if information "first obtained during conciliation . . . turns out [to] . . . fall[] within the scope of the standard set forth in Rule 26, then the requesting party [(i.e., the Commission)] is still entitled to production of that information subject to the provisions of this order."

I agree with the majority's decision to remand the matter, but I would require Respondents' motion for a protective order to be vetted further to determine

what constitutes conciliation material and if the conciliation material is otherwise discoverable. If—as the trial court already explained in its order—evidence is discovered outside the conciliation process, it is admissible.

Finally, I note that the trial court *sua sponte* raised the constitutional challenge to section 31-21-120(A) in an order denying reconsideration of the denial of summary judgment. This last-minute timing of the constitutional challenge foreclosed an in-depth review by the trial court. In fact, the majority opinion conducts a far more thorough analysis of the constitutional issue than occurred in the trial court. While the majority may ultimately be correct on the merits, and as explained above, I would vacate the finding of the statute's unconstitutionality and remand for further proceedings as to the scope of the protective order. Under my proposed disposition of this appeal, Respondents may prevail without reaching the issue of the statute's unconstitutionality. On remand, if it becomes necessary to reach the merits of the constitutional challenge, the issue should be more thoroughly examined and addressed *de novo*, unconstrained by the majority's disposition.

For these reasons, I concur in part and dissent in part.


**FEW, J., concurs.**